IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO

| | |
|---|---|
| JOSHAWA WEBB, *et al.*, | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| v. | )  07 C 3290 |
| | ) |
| THE UNITED STATES OF AMERICA, *et al.* | )  Judge Boyko |
| | ) |
| Defendants. | )  JURY TRIAL DEMANDED |
| | ) |

**PLAINTIFFS' AMENDED RESPONSE TO DEFENDANTS ANSARI, CROSS, FAITH,
GEORGE, MAYER AND METCALF'S MOTIONS FOR SUMMARY JUDGMENT AND
TO THE UNITED STATE'S MOTION TO BE SUBSTITUTED FOR DEFENDANTS
CROSS, LUCAS, AND ANSARI WITH RESPECT TO PLAINTIFFS' TORT CLAIMS**

Now Come JOSHAWA WEBB, LAKISHA WEBB, and KALIB WEBB, by their

counsel, LOEVY & LOEVY, and respectfully respond as follows to: Defendants' Ansari, Cross,

Faith, George, Mayer, and Metcalf's motions for summary judgment; and the United State's

motion to be substituted for defendants Cross, Lucas, and Ansari with respect to the tort claims.

**Introduction**

Plaintiff Joshawa Webb was wrongfully arrested, indicted, and incarcerated for nearly 21

months awaiting trial before the prosecution dismissed all charges against him on the eve of trial

after the only evidence against Mr. Webb proved to be pure fabrication. He was charged for

crimes he did not commit based on manipulated and fabricated evidence created by defendant

law enforcement officers and their so-called confidential informant, Jerrell Bray. The elaborate

ruse to falsely convict Mr. Webb has already begun to unravel: the "informant" has admitted to

brazenly lying to frame innocent people, in coordination with law enforcement officials; experts

have found that audiotapes used to obtain the warrant and charge Mr. Webb were doctored; and

the "stand-in," used to impersonate Mr. Webb during the fictional drug buy, has openly admitted

his deceptive role.

Furthermore, it turns out that the plot to frame Mr. Webb was part of a larger conspiracy

in which dozens of Mansfield citizens were falsely implicated based on defendants' doctored and

fictitious evidence, in cooperation with the Bray. At prosecutors' requests, federal judges have now freed most of those who were wrongfully convicted and incarcerated in this mass frame-up and a grand jury is presently considering criminal charges against law enforcement officers who participated in the conspiracy. Bray has reportedly admitted to the conspiracy and is in custody for his role in the frame-up.

In the face of these serious accusations, defendants submit affidavits saying that they did nothing illegal, and they ask this Court to summarily dismiss Mr. Webb's complaint, without discovery, simply based on their unexamined denials. These identical issues, through virtually identical briefings, were recently rejected by Judge Oliver in a similar case involving a different plaintiff and the same defendants (a copy of the decision is attached hereto as Exhibit A). Judge Oliver agreed with all of the arguments in this response, across the board, and Mr. Webb urges this Court to do the same. Defendants' motions are contrary to the Federal Rules of Civil Procedure, are not supported by the merits of this case, and fly in the face of any notion of justice. Defendants' suggestion that, without any discovery at all, their self-serving affidavits denying any misconduct require this Court to afford them qualified immunity and grant them summary judgment should likewise be rejected here.

As Judge Oliver held, defendants' claims of qualified immunity fail because plaintiffs' version of the facts must be accepted as true at this juncture, and according to those facts, defendants' egregious and intentional misconduct does not permit immunity. Furthermore, resolution of the immunity issues hinges on disputed issues of fact that can only be resolved through discovery in accordance with the Federal Rules of Civil Procedure. Because these issues present a material dispute of fact, summary judgment must be denied.

### Factual Background

Plaintiffs' First Amended Complaint ("FAC") alleges that Joshawa Webb was falsely implicated in a drug conspiracy in which he allegedly sold crack cocaine to defendant DEA agent Lee Lucas. *See* FAC, ¶ 16. In reality, Mr. Webb never met Mr. Lucas prior to being charged with this crime, and he had no involvement in the alleged drug ring. *Id.* ¶ 17. Plaintiffs further

2

allege that, in order to build a fake case against Mr. Webb, the defendants fabricated evidence falsely implicating Mr. Webb and destroyed and/or otherwise withheld evidence that would have helped exonerate him, all in violation of the constitution. *Id.* ¶ 24; *See also* John Caniglia, *Mansfield Drug Case Gone Wrong: The Inside Story*, THE PLAIN DEALER, June 22, 2008.[1] Though Mr. Webb was ultimately exonerated and released from jail, he, his wife, and his child suffered substantial damages as a result of the wrongful arrest and more than 20 months of wrongful incarceration. FAC ¶ 31.

The indications that Mr. Webb was falsely framed abound. In or about May of 2007, Jerrell Bray, the so-called confidential informant used by defendant Lucas to obtain a warrant and indictment in Mr. Webb's case, admitted that the alleged drug buy between Mr. Webb and Mr. Lucas never occurred. *Id.* ¶ 23. Mr. Bray admitted that, instead, a drug transaction had been simulated and recorded, using a stand-in for Mr. Webb, in order to falsely make it appear as if Mr. Webb was involved in the drug ring. *Id.*; Milan Simonch, *A Frame-Up Falls Apart*, THE PITTSBURGH POST-GAZETTE, February 24, 2008. Two separate experts determined that an audio recording used by defendants to charge, indict, and wrongfully incarcerate Mr. Webb pre-trial was either tampered with or entirely false. FAC ¶ 22; Simonch at 3; Mike Tobin, Amanda Garrett, and John Caniglia, *U.S. Probe Puts Cleveland DEA Agent's Work Under Scrutiny*, THE PLAIN DEALER, July 29, 2007. Jeremiah Conrad, the stand-in used by Mr. Bray to impersonate and frame Mr. Webb, has since admitted his participation in this frame-up to the media and in a sworn affidavit. *See* Affidavit of Jeremiah Conrad (Exhibit C); Mike Tobin, *DEA Cases in Question After Informant Said He Lied*, THE PLAIN DEALER, July 24, 2007. Mr. Bray's wife, LaTonya Bray, has sworn in an affidavit that Bray told her he conspired with defendant Lucas and other law enforcement officials to frame innocent people. *See* Affidavit of LaTonya Bray (Exhibit D).

To fully understand the conspiracy to frame Mr. Webb, however, the larger context is

---

[1]    The newspaper articles cited herein are attached to this pleading as Exhibit B.

essential. Mr. Webb's arrest, indictment, and pre-trial incarceration were part of a widespread,

egregious plot by defendants to frame over two dozen people in Mansfield for fictional drug

crimes, an "elaborate hoax that had ensnared people for crimes they did not commit." Simonch at

2 (quoting Bray's confession of his role in the frame-up); *see also* John Caniglia and Mike Tobin,

*DEA Roundup Wrecked Lives*, THE PLAIN DEALER, August 5, 2007. Working with Bray,

defendants have caused the false prosecution of 26 people to date, and 23 of those cases have

either ended in acquittals by juries or been dismissed, after convictions were entered, by judges

who learned of the fabricated evidence. Simonch at 1. At prosecutors' requests, federal judges

have freed 16 defendants who were convicted by the false testimony or who pled guilty in the

face of fictional evidence. *Id.*; *United States of America v. Nabors et al.*, 1:05-C-00537-JRA,

Dkt. No. 912, 926, 930, 933. A grand jury is presently considering criminal charges against

defendants for their participation in the massive frame-up. *See* Caniglia, *Mansfield Drug Case

Gone Wrong*, at 9; John Caniglia, *Witness' Testimony Key to Probe of Botched Arrests Involving

DEA Agent Lee Lucas*, THE PLAIN DEALER, October 28, 2008.

　　　　Because discovery has not yet occurred, plaintiffs have not yet had the opportunity to

depose Bray or the defendants in this case. Nevertheless, there are strong indications that

discovery will reveal reliable support for plaintiffs' allegations. Defendant Lucas has admitted

that if questioned about the Mansfield conspiracy, he and other defendants would need to assert

their Fifth Amendment rights, because to answer questions truthfully might incriminate them.

*See Westerfield v. United States*, 07 CV3518, Dkt. No. 35 (attached hereto as Exhibit E). Bray

has admitted to the media that in order to obtain the Mansfield convictions, "he lied with

impunity to implicate Mansfield residents in drug crimes. . . .[L]aw officers, led by a federal

agent named Lee Lucas, helped him railroad many of those people into convictions." Simonch at

1. In fact, Bray has pled guilty to multiple counts of perjury and violating civil rights for his role

in contributing to the Mansfield convictions. Thomas J. Sheeran, *Botched Drug Investigation in

Mansfield Highlights Risk of Using Secret Sources*, ASSOCIATED PRESS, February 11, 2008.

　　　　Further supporting plaintiffs' allegations, a recent article reports that Judge Gwin ordered

federal prosecutors to turn over internal memos, e-mails, and documents that the judge believes may prove the government was fully aware that defendant Lucas was fictionalizing testimony as early as 2003, long before plaintiffs' case. *See* John Caniglia, *Challenges by Felons Seek New Drug Trials*, THE PLAIN DEALER, August 12, 2008. Thus, even though no discovery has been conducted in this case, there are alarming indications that defendants were involved in the conspiracy to frame innocent citizens that ensnared Mr. Webb.

**Argument**

## I.  Legal Standards

### A.  The Standard for Adjudicating Summary Judgment

Summary judgment is appropriate "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." *Nance v. Goodyear Tire & Rubber Co.*, 527 F.3d 539, 546 (6th Cir. 2008); Fed. R. Civ. P. 56(c). The ultimate inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Nance*, 527 F.3d at 547, *quoting Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986). When deciding a motion for summary judgment, a court must view the evidence in favor of the non-moving party and draw all reasonable inferences in that party's favor. *Hardesty v. Hamburg Twp.*, 461 F.3d 646, 650 (6th Cir. 2006), *citing Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

### B.  The Standard for Assessing Qualified Immunity

Government actors are shielded from liability by qualified immunity when their conduct "does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). In order to determine whether a defendant is entitled to qualified immunity, the Sixth Circuit usually uses a two-part test, asking: (1) whether, considering the allegations in a light most favorable to the party injured, a constitutional right has been violated; and (2) whether that right was clearly established. *Lanman v. Hinson*, 529 F.3d 673, 683 (6th Cir. 2008) (citations omitted). Qualified

5

immunity is an immunity from suit, rather than a mere defense to liability, and, as such, it is an issue that should be resolved as early as possible in the litigation. *Dixon v. Donald*, No. 07-5587, 2008 WL 4148515, at *2 (6th Cir., Sept. 5, 2008), *quoting Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985).

## II.  Defendants' Motions for Summary Judgment are Premature

Defendants have twice asked this Court to immunize them from any discovery – the very discovery plaintiffs require in order to contradict defendants' affidavits and establish that Mr. Webb's rights were violated.  Now, while their latest discovery stay motions are still pending, defendants ask this Court to assess the facts of the case and to hold plaintiffs' lack of opportunity to conduct discovery against them.  There is no legal support for this rush effort.  Instead, the law is clear that summary judgment would be hopelessly premature at this time.

The well-established rule in this Circuit is that summary judgment on a factual issue may not be adjudicated until the plaintiff has had an opportunity for discovery. *Tucker v. Union of Needletrades, Industrial and Textile Employees*, 407 F.3d 784, 788 (6th Cir. 2005); *see also Vance v. United States*, 90 F.3d 1145, 1148 (6th Cir.1996) ("The general rule is that summary judgment is improper if the non-movant is not afforded a sufficient opportunity for discovery."); *United Auto Workers, Local 594 v. International Union, UAW*, 956 F.2d 1330, 1337 (6th Cir.1992) ("Summary judgment is improper when there has not been sufficient opportunity for discovery."); *Tarleton v. Meharry Medical College*, 717 F.2d 1523, 1535 (6th Cir.1983) ("summary judgment should not ordinarily be granted before discovery has been completed"); *Qualicare-Walsh, Inc. v. Ward*, 947 F.2d 823, 827 (6th Cir. 1991) ("Caselaw indicates that parties should be able to 'complete' discovery before having to resist summary judgment.").  This rule is sensible because a motion for summary judgment arguing that there is no genuine issue of material fact cannot possibly be resolved until after discovery is completed and the facts are established.  This requirement "is particularly strong when constitutional and civil rights claims are at issue." *Tarleton* at 1535, *citing Porter v. Califano*, 592 F.2d 770, 778 (6th Cir.1979); *Mabey v. Reagan*, 537 F.2d 1036, 1050 (9th Cir. 1976); 10A C. Wright, A. Miller & M. Kane,

*Federal Practice and Procedure* § 2732.2 (1983).  Thus, when a motion for summary judgment requires the court to weigh the sufficiency of the evidence, where the defense has not yet turned over the pertinent evidence in its control, as is the case here, a court cannot possibly weigh the evidence and deem it so lacking as to not merit consideration by a jury.

Defendants, however, argue that in order to survive summary judgment, plaintiffs here have the burden of demonstrating evidence supporting their allegations, even though they have not yet had an opportunity to conduct discovery.  Although plaintiffs certainly meet that burden (*see* Argument III(B)), there is simply no basis for imposing it.

None of the cases cited by defendants supports this proposed evidentiary burden.  In fact, virtually all of the cited cases involve the court considering summary judgment <u>after</u> the parties were permitted to complete discovery, and several of the cited cases confirm that a plaintiff must be allowed to conduct discovery before being required to defend against summary judgment.  *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 245 (1986) (summary judgment was adjudicated after discovery was completed); *Celotex Corp. v. Catrett*, 477 U.S. 317, 320, 323  (1986) (ruling on summary judgment motion after completion of discovery and holding that "the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery. . . ."); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 578 (1986) ("After several years of detailed discovery, petitioners filed motions for summary judgment"); *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1478 (6th Cir. 1989) (finding that an adequate time for discovery is a prerequisite for summary judgment); *Sixty Ivy Street v. Alexander*, 822 F.2d 1432, 1434 (6th Cir. 1987) (depositions were taken before the parties litigated summary judgment on a contract dispute); *Harris v. Adams*, 873 F.2d 929, 931 (6th Cir. 1989) (the court adjudicated summary judgment after the completion of discovery).  None of these cases even hints that an assessment of the sufficiency of the evidence should be made based on the pre-discovery pleadings, and several expressly indicate that discovery must be permitted before summary judgment on the

facts is considered.[2] Thus, the law in this Circuit squarely indicates that defendants' proposed evidentiary requirement must be rejected.

Defendants misplace reliance on language in *Harlow v. Fitzgerald*, 457 U.S. 800, 818-19 (2001); *Crawford-El v. Britton*, 523 U.S. 574, 598 (1998); and *Goad v. Mitchell*, 297 F.3d 497 (6th Cir. 2002), indicating that the issue of qualified immunity should be decided as early as possible in the course of litigation, to argue that a pre-discovery summary judgment assessment of the facts is proper. Those cases are ones drawing a distinction between the objective and subjective aspects of qualified immunity. *Harlow*, 308 U.S. at 819; *Crawford-El*, 523 U.S. at 597-98; *Goad*, 297 F.3d at 502-3. The objective element, which is what is at issue here, "involves a presumptive knowledge of and respect for 'basic, unquestioned constitutional rights.'" *Harlow* 308 U.S. at 819, *quoting Wood v. Strickland*, 420 U.S. 308, 322 (1975). The subjective component, not at issue here, refers to whether the government actor had "permissible intentions" (*e.g.*, whether he engaged in conduct that would be illegal if done for discriminatory reasons, but legal if done for benign reasons). *Id.* at 819. The cited cases only hold that there should be some evidence supporting the subjective aspects of qualified immunity (which are not at issue here) before the case should be allowed to go forward. The cases conclude that regarding the objective analysis, a court may only consider the legal analysis pre-discovery – it may not evaluate the facts and decide whether the officers committed the misconduct alleged. *Harlow*, 308 U.S. at 818-19; *Crawford-El*, 523 U.S. at 597-98; *Goad*, 297 F.3d at 503.

The hazards of forcing plaintiffs to defend the facts of the case without an opportunity for discovery are made abundantly clear in this case. It is telling that in another case, involving the same defendants and another plaintiff who fell victim to the Mansfield frame-up conspiracy, defendant Lucas asserted that the defendants would be required to invoke the Fifth Amendment

---

[2]    The remaining three cases cited by defendants are equally unavailing. In *Guarino v. Brookfield Township Trustees*, 980 F.2d 399 (6th Cir. 1992); *Reed v. Stewart*, 97 F.3d 1452 (Table) (6th Cir. 1996); and *Phebus v. City of Memphis*, 340 F. Supp. 2d 874, 876 (W.D. Tenn. 2004), the motions for summary judgment were granted because the plaintiff failed to respond. Here, in contrast, plaintiff opposes the motions and attaches numerous affidavits, including his Rule 56(f) affidavit, in opposition.

if questioned about their role in framing innocent Mansfield citizens, because to answer such questions truthfully might incriminate them. *See* Exhibit E. There is no reason to suspect that he would take a different position in this case, and his damning silence would defeat defendants' pending summary judgment motions. *See Hoxie v. Drug Enforcement Admin.*, 419 F.3d 477, 483 (6th Cir. 2005), *citing Baxter v. Palmigiano*, 425 U.S. 308, 318-19 (1976) (a negative inference can be drawn from a failure to testify in civil proceedings); *United States v. Hale*, 422 U.S. 171, 176 (1975) ("Silence gains more probative weight where it persists in the face of accusation, since it is assumed in such circumstances that the accused would be more likely than not to dispute an untrue accusation.").

Additionally, Judge Gwin's ruling, ordering prosecutors to turn over internal memos, e-mails, and documents that the judge believes may prove that the government was complicit in efforts to fictionalize testimony, also underscores the need for discovery. That ruling strongly suggests that the evidence proving the conspiracy is out there and is constantly being revealed and developed. Due to defendants' repeated efforts to stall discovery, however, plaintiffs have just not yet had a chance to retrieve that evidence.

In sum, Mr. Webb is entitled to conduct discovery before he must provide the evidence proving his allegations. Judge Oliver recently considered these same arguments by the same defendants on summary judgment, and he correctly denied summary judgment. (*See* Exhibit A). Mr. Webb urges this Court to do the same. There is simply no legal support for defendants' effort to put the cart before the horse and require evidence, without first requiring defendants to meaningfully participate in discovery so that Mr. Webb can obtain that evidence.

## III.    There is No Basis for Summary Judgment

### A.    Defendants' Self-Serving Denials Create a Genuine Dispute of Fact Precluding Summary Judgment

Defendants' novel framework for adjudicating qualified immunity issues would immunize any government actor who simply submits a self-serving affidavit (as the defendants did here) swearing, "I didn't do it." According to defendants, plaintiffs must remain in the

9

ultimate Catch-22 – they are not entitled to conduct any discovery unless they have the evidence to disprove defendants' denials, but they cannot disprove defendants' denials until they are allowed to conduct discovery to obtain the evidence defendants exclusively control.  Fortunately, the law does not permit such strategy.

Instead, as explained above, a proper qualified immunity analysis involves both questions of law and questions of facts.  While the legal questions are appropriate for pre-discovery summary judgment, the factual disputes are not.  The qualified immunity shield provides that before a government actor is forced to defend against a suit, the court should consider the essential legal questions:  whether the complaint sufficiently alleges a violation of a constitutional right and, if so, whether, as a matter of law, the right violated was clearly established. *Dickerson v. McClellan*, 101 F.3d 1151, 1157-58 (6th Cir.1996).  But when the issue of qualified immunity turns on a dispute of facts – on whether the defendant actually committed the alleged violation of the constitutional right – summary judgment is unavailable. *Id.* at 1158 ("Summary judgment is not appropriate if there is a genuine factual dispute relating to whether the defendants committed acts that allegedly violated clearly established rights."); *Pouillon v. City of Owosso*, 206 F.3d 711, 715 (6th Cir. 2000) (where "the legal question of qualified immunity turns upon which version of the facts one accepts, the jury, not the judge, must determine liability.") (citation omitted); *Sova v. City of Mt. Pleasant*, 142 F.3d 898, 903 (6th Cir. 1998) (when resolution of the immunity issue is dependent upon which view of the facts is accepted, summary judgment is unavailable); *Kinkus v. Village of Yorkville, Ohio*, No. 07-3483, 2008 WL 3820555, 3 (6th Cir., August 13, 2008), *quoting* Fed. R. Civ. P. 56(c) (summary judgment may be granted on the factual issues at the heart of a qualified immunity analysis only when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.").

In qualified immunity cases, it is error to grant summary judgment on the factual dispute of whether the official committed the illegal conduct precisely because, in resolving a pre-

10

discovery summary judgment motion, the court is required to assume the truth of the plaintiffs' factual allegations. The court must limit its determination to "whether, assuming the truth of the plaintiff's allegations, the official's conduct violated clearly established law." *Crawford-El v. Britton*, 523 U.S. 574, 598 (1998); *see also Dixon v. Donald*, No. 07-5587, 2008 WL 4148515, *2 (6th Cir., Sept. 5, 2008), *citing Scott v. Harris*, __ U.S. __, 127 S.Ct. 1769, 1774 (2007) ("In resolving questions of qualified immunity, courts are required to resolve a 'threshold question: Taken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right?") (*quoting Saucier v. Katz*, 533 U.S. 194, 201 (2001)); *Wallin v. Norman*, 317 F.3d 558, 561 (6th Cir. 2003), *quoting Lavado v. Keohane*, 992 F.2d 601, 605 (6th Cir.1993) ("for purposes of a motion for judgment on the pleadings, all well-pleaded material allegations of the pleadings of the non-movant must be taken as true."). Accordingly, when conducting a pre-discovery qualified immunity analysis, "it is important to remember that the defendant is, in essence, saying: 'If the plaintiff's version is credited, what I did, judged today, *arguendo* would be wrongful, but at the time I acted, no reasonable officer would have known he was acting wrongfully.'" *Kain v. Nesbitt*, 156 F.3d 669, 671-72 (6th Cir. 1998) (citation omitted).

Using that framework, any qualified immunity analysis here must begin (and end) with a full crediting of the allegations in plaintiffs' complaint: defendants conspired to frame Mr. Webb for a crime they knew he did not commit. In that context, defendants' assertions that they did not engage in any misconduct merely creates a dispute of fact that is unmistakably premature for adjudication. Indeed, given the requirement that Mr. Webb's allegations be construed as true, it is mystifying how defendants can repeatedly claim that their "facts" are "undisputed" and unilaterally vindicate them. *See, e.g.*, Ansari's Mot. at 4 ("The undisputed facts are that Ansari did not violate Webb's civil rights"); Cross Mot. at 12 ("Cross did not engage in any conduct . . . that violated Joshawa Webb's constitutional rights."); Mayer Mot. at 2 ("The evidence . . . demonstrates that Sergeant Mayer . . . never knowingly violated federal law."). Such bold conclusory statements must be tested by discovery. Until then, defendants are not entitled to

11

have their version of the facts adopted as the facts of this case.[3]

**B.    There is Ample Support for Plaintiffs' Allegations, Including the Attached Newspaper Articles, Investigative Report, and Affidavits, to Defeat Summary Judgment**

While plaintiffs obviously cannot yet attach deposition transcripts or discovery material to this response, as discovery has not yet even begun in this case, the media coverage of this case, the federal courts' decisions to vacate convictions reliant on defendants' law enforcement work, Judge Gwin's order that federal prosecutors turn over materials potentially revealing government complicity in the conspiracy, defendant Lucas' admission that the defendants cannot answer questions about this conspiracy without incriminating themselves, and the grand jury's investigation of the law officers involved all show that there is a troubling dispute of facts crying out for further exploration.

Under Fed. R. Civ. P. 56(f), a party facing a summary judgment motion may submit an affidavit stating that the party cannot present affidavits setting forth facts essential to justify the party's opposition to the motion and stating the reasons for the party's inability to present those affidavits. In accordance with this Rule, plaintiffs attach an affidavit describing the evidence they believe will support this case and explaining that they have not yet been able to obtain that evidence due to the absence of any opportunity for discovery in this case. *See* Affidavit of Debra Loevy-Reyes (Exhibit F).

The Rule 56(f) affidavit details many sources of evidence that would be in defendants'

---

[3]    It is noteworthy that defendants do not even attempt to argue that they prevail under a legal analysis of the qualified immunity issue, undoubtedly because accepting the facts in the light most favorable to plaintiff (as required), defendants' participation in an intentional frame-up and creation of false evidence to ensure the conviction of an innocent man unmistakably violates clearly established constitutional rights, most notably, the right to due process. *See California v. Trombetta*, 467 U.S. 479, 486 (1984) ("The most rudimentary of the access-to-evidence cases impose upon the prosecution a constitutional obligation to report to the defendant and to the trial court whenever government witnesses lie under oath"); *Napue v. Illinois*, 360 U.S. 264, 269 (1959) ("[I]t is established that a conviction obtained through use of false evidence, known to be such by representatives of the State" must fail under the Fourteenth Amendment); *United States v. Bagely*, 473 U.S. 667, 679 n.7 (1985) (use of perjured testimony by prosecution to obtain a conviction and the deliberate suppression of evidence that would have impeached and refuted that testimony is a denial of due process).

exclusive control, obtainable only through discovery, such as defendants' deposition testimony

(most likely invoking their Fifth Amendment right against self-incrimination), the doctored

audiotapes and/or videotapes of alleged undercover drug buys; audiotapes and/or videotapes of

alleged undercover drug buys that show the events were fabricated by the defendants; and police

reports and/or reports from the Drug Enforcement Agency documenting the conspiracy, revealing

identifying information relating to other possible witnesses or impeaching defendants' claims

that they were not involved in this case. Finally, the affidavit sets forth information that likely

will come from third-party witnesses, but those witnesses are either not yet identified (because of

the lack of discovery), or they have not yet been deposed because without discovery, plaintiff

does not yet have an adequate background for deposing them. This affidavit indicates that

discovery is likely to further reveal disputed issues of fact, so summary judgment must be denied.

This response also attaches the affidavits of Jeremiah Conrad and LaTonya Bray, both of

which support the allegations in the complaint. In remarkable candor, Conrad admits that at

Jerrell Bray's request, he staged the fake drug buy that led to criminal charges against Mr. Webb.

(*See* Exhibit C). Both LaTonya Bray's affidavit and various media accounts confirm that Bray

claims he was not a rogue informant – he was working with numerous law enforcement officials,

as well as defendant Lucas, in staging these frame-ups. *See* Exhibit D; Milan Simonch, *A

Frame-Up Falls Apart*, THE PITTSBURGH POST-GAZETTE, February 24, 2008; Mike Tobin, *DEA

Cases in Question After Informant Said He Lied*, THE PLAIN DEALER, July 24, 2007.

Additionally, this response attaches an affidavit from Joshawa Webb, swearing that he

never sold drugs to Lee Lucas, as the criminal charges alleged. *See* Affidavit of Joshawa Webb

(Exhibit G).

Finally, this response attaches the Drug Enforcement Agency's "Report of Investigation,"

dated October 14, 2005, detailing some of the surveillance done in the criminal investigation of

Joshawa Webb. (Exhibit H). The report outlines defendants Metcalf, Mayer, Lucas, and Cross'

involvement with certain portions of the investigation. In particular, in the report, those

defendants claim that they witnessed the false drug transaction. Such involvement belies

13

defendants' claims that they had nothing to do with Mr. Webb's criminal conviction.

Thus, there is ample evidence, available despite the lack of discovery, showing a clear dispute of fact. Mr. Webb therefore respectfully asks this Court to deny defendants' motions for summary judgment.

**IV.    It is Premature to Dismiss Defendants Cross, Ansari and Lucas as Defendants for Plaintiffs' Tort Claims**

Because discovery has not yet occurred, plaintiffs have no way to know defendants' motivation in framing innocent people for fictional crimes. Defendants may have been motivated by illicit gain (possibly working with the "informant" to gain drugs or other illegal profits), career goals (promotions are perhaps based on blind arrest statistics), or some other perceived benefit that would come with sending innocent people to jail. Regardless of each defendant's motive, the government has conceded that its employees were acting in the scope of their employment. This concession comes even before discovery allowed plaintiff to uncover the full extent of defendants' conspiracies.

This Court does have the discretion to nevertheless allow the claims to proceed against the individual defendants, as well as the government, so that plaintiffs can discover if all of the misdeeds were indeed done in the scope of employment. *See Gutierrez de Martinez v. Drug Enforcement Admin.*, 111 F.3d 1148, 1153-54 (4th Cir. 1997) (reciting basic standards among the circuit courts to allow for discovery to contest Attorney General certifications on scope of employment for purposes of the Federal Tort Claims Act). The reason why discovery is allowed and is needed here is that although the Attorney General's certification is *prima facie* evidence, it is evidence that can be rebutted by plaintiffs. *Id.* The Attorney General's certification need not be given judicial deference in resolving this issue. *Id.*

Rogue law enforcement officers can take illicit action outside of the job, and it is plaintiffs' counsel's experience that frequently, in cases like this, many of the actions are indeed taken outside the scope of the employment. Accordingly, plaintiffs ask this court to allow discovery on the scope of employment issue so that the tort claims may proceed against the

14

government employees until such time as sufficient evidence is yielded as to whether all of their misdeeds were done within the scope of their work.

## Conclusion

Even though no discovery has been conducted in this case, there are alarming indications of a conspiracy involving Bray and defendant law enforcement officials to frame innocent citizens by fabricating evidence and giving false testimony. Through the discovery process, plaintiffs will finally have the chance to clarify defendants' role in this travesty. This is why the Rules of Civil Procedure are set up the way they are: plaintiffs do not have to defend summary judgment on factual disputes before they are allowed discovery to obtain the proof they need. The Rules are designed so that defendants' self-serving claims that "we didn't do it" are not enough to support summary judgment.

Defendants can swear all they want that they did nothing wrong, but plaintiffs should be allowed the opportunity to prove otherwise. This is particularly important in a case like this one, where the critical proof is currently in the exclusive possession of the defense. Until discovery is allowed, for the purpose of this motion, plaintiffs' version of the facts must be accepted as true, and even defendants do not dispute that the allegations of such egregious misconduct, if credited, do not allow for qualified immunity. Plaintiffs therefore respectfully ask this Court to deny defendants' motions for summary judgment as to liability and qualified immunity. As for the tort claims, it would serve the interest of justice to allow plaintiffs to conduct discovery about whether defendants were acting within the scope of employment during the entire time they were framing innocent citizens. Plaintiffs ask this Court to deny the motions for summary judgment as to those claims as well and to deny the government's motion to be substituted in to replace defendants Cross, Ansari, and Lucas.

RESPECTFULLY SUBMITTED,


/s/ Jon Loevy
Attorneys for Plaintiffs

15

Jon Loevy
Arthur Loevy
Mark Loevy-Reyes
Debra Loevy-Reyes
LOEVY & LOEVY
312 North May, Suite 100
Chicago, IL 60607
(312) 243-5900

## CERTIFICATE OF SERVICE

I, Jon Loevy, an attorney, certify that on November 20, 2008, I served this document by ECF electronic filing as to each party who is represented by counsel who uses electronic filing.

S/Jon Loevy
Attorneys for Plaintiff