**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **JOSHAWA WEBB, ET AL.,** | ) | **CASE NO.1:07CV3290** |
| | ) | |
| **Plaintiffs,** | ) | **JUDGE CHRISTOPHER A. BOYKO** |
| | ) | |
| Vs. | ) | |
| | ) | |
| **THE UNITED STATES OF AMERICA,** | ) | **OPINION AND ORDER** |
| **ET AL.,** | ) | |
| | ) | |
| **Defendants.** | ) | |

**CHRISTOPHER A. BOYKO, J:**

This matter is before the Court on the Motions of Defendants Dan George (ECF #61), Matt Mayer (ECF # 62), Larry Faith (ECF # 63), Chuck Metcalf (ECF # 64), for Summary Judgment based on the defense of qualified immunity. These Defendants represent the individual named State Defendants in this case. The named Federal Defendants' Motions will be addressed in a subsequent opinion. For the following reasons, the Court grants George, Faith, Metcalf and Mayer's motions.

**Background**

The case arises from a First Amended Complaint filed by Joshawa Webb ("Webb") alleging constitutional violations, stemming from his arrest and incarceration for an alleged drug

1

conspiracy. Webb contends he was innocent of the charges and his arrest and incarceration were the result of wrongful acts by Defendants. The Court finds Plaintiffs' First Amended Complaint does not allege any constitutional violation claims on behalf of Webb's fellow Plaintiffs, to wit; his mother Juanita Brooks, his unnamed adolescent sister or his child; further, Webb has not provided any evidence that he is a guardian authorized to bring suit on behalf of his adolescent sister. Therefore, this opinion's discussion on qualified immunity applies solely to the claims of Webb.

**Defendants' Version of the Facts**

The matter before the Court arises from Webb's arrest in connection with a drug investigation. According to Defendants' affidavits in this suit, on November 9, 2005, Plaintiff Joshawa Webb was indicted for violations of federal criminal drug laws. The investigation began in December of 2004 due to a murder that occurred in Richland County. The Richland County Sheriff's investigation of the murder indicated it was drug related and, as a result, the Richland County Sheriff's Department began an investigation of drug trafficking in Richland County. At the request of the Richland County Sheriff's Department in late August or early September of 2005, the Drug Enforcement Agency Task Force began working collaboratively with the Richland County Sheriff's Department in investigating drug trafficking in and around Richland County.

As part of the investigation, on October 13, 2005, Richland County Sheriff's Department Detective Chuck Metcalf monitored and recorded a phone conversation between Jarrell Bray, a paid DEA informant, who was also a confidential informant used previously by the Richland County Sheriff's Department and a man Bray identified as Joshawa Webb, wherein Bray relayed

2

he had $2,000.00 to purchase crack the next day.

On October 14, 2005, Detective Metcalf, Richland County Sheriff's Department Sgt. Matt Mayer, DEA Special Agent Lee Lucas, DEA Task Force Officer Tom Verhiley and DEA Special Agent Robert Cross met at the Richland County Sheriff's Office to arrange a controlled buy of two and a half ounces of crack cocaine from the person identified by Bray as Plaintiff Joshawa Webb. That same day Agent Lucas, operating undercover, contacted Bray, who informed Agent Lucas that Webb was with him. After securing money for the buy from federal government funds wherein the serial numbers were previously recorded, Agent Lucas, wearing a wire, along with Detective Metcalf, Agent Cross, Sgt. Mayer and Agent Verhiley, proceeded to the location of the controlled buy. Agent Lucas drove in a separate vehicle and pulled into a gas station next to a vehicle with tinted windows. The other agents and Richland officers were unable to observe the vehicles from their monitoring location. Agent Lucas later informed Agent Cross that he entered the vehicle with Bray where a large white male was seated in the front passenger seat. Bray identified the individual as Webb. Lucas exchanged $2600.00 dollars for approximately 70 grams of crack cocaine. After the transaction, Bray returned to the Richland County Sheriff's office for a debriefing.

In March of 2006, Webb was indicted under a superceding indictment for the alleged sale of crack cocaine as described above. Sometime in 2007 Bray was arrested. Bray then recanted his previous statements regarding the controlled buy allegedly involving Webb. As a result, the government moved to dismiss the charges against Webb and on July 16, 2007, the Court granted the government's motion and dismissed the superceding indictment against Webb. On October 24, 2007, Webb filed his Complaint with this Court.

**Plaintiffs' Complaint**

Webb contends he was wrongfully arrested, indicted and incarcerated for nearly twenty-one months on fabricated evidence.  Bray confessed to fabricating evidence to frame innocent people, including Webb.  Webb alleges audiotapes used to obtain the warrant for Webb's arrest were tampered with or fabricated by Defendants, and a "stand-in" was used to play the part of Webb in the fictional controlled buy, which "stand-in" confessed to his role.

Plaintiffs' First Amended Complaint contends the following: Webb  never met Agent Lucas prior to being indicted and was not involved in the alleged drug ring.  On November 9, 2005, Defendants Lucas, George and other unidentified individuals kicked in the door of the home of Juanita Brooks, Webb's mother, looking for Webb.  They attempted to force Webb's adolescent sister to accompany them.  Lucas, George and other unidentified personnel then forced their way into Webb's home where they arrested Webb in the presence of Webb's wife, Lakeisha and infant child.  Plaintiffs contend that Defendants then unlawfully searched Webb's home, where no evidence of criminal activity was found.

The First Amended Complaint further states that two experts have reviewed the audio recordings used to indict Webb and found they were tampered with or fabricated.  According to the First Amended Complaint, Bray admitted the controlled buy was simulated and recorded to make it sound like Webb was involved in the drug ring.  The First Amended Complaint further alleges Defendants fabricated, destroyed and/or withheld evidence that would have exonerated Webb and alleges Defendants coached and manipulated witnesses and withheld doing so from prosecutors. The First Amended Complaint alleges Defendants violated  Webb's rights under the Fourth, Sixth, Eighth and Fourteenth Amendments; Defendants conspired to deprive Webb

of his constitutional rights; the municipal defendants failed to train their employees; and, in addition, their policies and practices violated Webb's constitutional rights, and finally, alleges violations of Ohio state law for malicious prosecution and intentional infliction of emotional distress.

## **STANDARD OF REVIEW**

In accordance with Federal Rule of Civil Procedure 56(c), summary judgment is appropriate when no genuine issues of material fact exist and the moving party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *LaPointe v. United Autoworkers Local 600*, 8 F.3d 376, 378 (6th Cir. 1993). The burden of showing the absence of any such genuine issues of material facts rests with the moving party:

> [A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrates the absence of a genuine issue of material fact.

*Celotex*, 477 U.S. at 323. A fact is material only if its resolution might affect the outcome of the lawsuit under the governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

Once the moving party has satisfied its burden of proof, the burden then shifts to the nonmoving party pursuant to Federal Rule of Civil Procedure 56(e), which provides:

> When a motion for summary judgment is properly made and supported, an opposing party may not rely merely on allegations or denials in its own pleading; rather, its response must-by affidavits or as otherwise provided in this rule- set out specific facts showing a genuine issue for trial. If the opposing party does not so respond, summary judgment should, if appropriate, be entered against that party.

In ruling upon the motion, the court must afford all reasonable inferences and construe the evidence in the light most favorable to the nonmoving party. *Cox v. Kentucky Dept. of Transp.*, 53 F.3d 146, 150 (6th Cir. 1995); *United States v. Hodges X-Ray, Inc.*, 759 F.2d 557, 562 (6th Cir. 1985).  However, summary judgment should be granted if the party bearing the burden of proof at trial does not establish an essential element of its case. *Tolton v. American Biodyne, Inc.*, 48 F.3d 937, 941 (6th Cir. 1995) (citing *Celotex*, 477 U.S. 317).  Furthermore, this Court is not required "to search the entire record to establish that it is bereft of a genuine issue of material fact." *Betkerur v. Aultman Hospital Ass'n.,* 78 F.3d 1079, 1087 (6th Cir. 1996).  "Rather, the burden falls on the non-moving party to designate specific facts or evidence in dispute." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249-250 (1986).

**Qualified Immunity**

"Government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald,* 457 U.S. 800, 818 (1982) "Qualified immunity 'is an affirmative defense that must be pleaded by a defendant official.'" *Harlow*, 457 U.S. 800, 815 (1982).  But qualified immunity "is an immunity from suit rather than a mere defense to liability." *Hunter v. Bryant*, 502 U.S. 224, 227 (1991) (quoting *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985)).  "Immunity ordinarily should be decided by the court long before trial." *Hunter* at 228 (1991) (citing *Mitchell* at 527-29). "Unless the plaintiff's allegations state a claim of violation of clearly established law, a defendant pleading qualified immunity is entitled to dismissal before the commencement of discovery." *Mitchell* at 526 (citing *Harlow* at 818). The issue of qualified immunity must be

6

addressed at the earliest possible point in the litigation. *Saucier v. Katz,* 533 U.S. 194, 200-201 (2001); *Siegert v. Gilley,* 500 U.S. 226, 232 (1991). The Supreme Court has stated that, "[u]ntil this threshold immunity question is resolved, discovery should not be allowed. " *Harlow* 457 U.S. at 819.  A district court should resolve the immunity question before permitting discovery; *Crawford-El v. Britton,* 523 U.S. 574, 598 (1998)  Indeed, one of the core purposes of the immunity is to shield officials from "the burdens of broad-reaching discovery." *Crawford-El,* 523 U.S. at 588 (quoting *Harlow*, 457 U.S. at 817-818).

The analysis of a qualified immunity claim is distinct from the merits of the underlying claim itself. *Saucier,* 533 U.S. at 204; *Dunigan v. Noble,* 390 F.3d 486, 491 n.5 (6th Cir. 2004). Qualified immunity is a purely legal question which must be determined early in the proceedings. *Saucier,* 533 U.S. at 200; *Siegert,* 500 U.S. at 232.

The defendants bear the initial burden of coming forward with facts which suggest that they were acting within the scope of their discretionary authority at the time in question. *Rich v. City of Mayfield Heights,* 955 F.2d 1092, 1095 (6th Cir. 1992).  The burden then shifts to the plaintiff to show that the defendants are not entitled to qualified immunity. *Untalan v. City of Lorain,* 430 F.3d 312, 314 (6th Cir. 2005); *Cartwright v. City of Marine City,* 336 F.3d 487, 490-491 (6th Cir. 2003).

## **ANALYSIS**

### **Defendants' Motions for Summary Judgment**

### **Dan George**

Defendant George is a probation officer in Richland County.  In support of his Motion for Summary Judgment, George submitted an affidavit attesting he did not arrest Webb, did not

search Webb's premises, did not participate in the controlled drug buy and did not manipulate a witness. He attests his only role in the proceedings was assisting in the execution of a lawful arrest warrant issued by a United States District Court Magistrate Judge.

Plaintiffs' First Amended Complaint alleges that on November 9, 2005, George, along with Lucas and other unidentified Defendants:

> "kicked in the door of Juanita Brooks' home. In an effort to locate Mr. Webb, Lucas and Dan George attempted to force Mr. Webb's adolescent sister to accompany them. Later on or about November 9, 2005, Lee Lucas, Dan George, and yet-unidentified Defendants forced their way into Mr. Webb's residence with their guns drawn and falsely arrested Mr. Webb. Lakeisha Webb and Kalib Webb, who was 15 months old at the time, were present for those events. After arresting Mr. Webb, the Defendants searched the Webb home without lawful justification. The search did not uncover evidence of any crime."

In order to prevail on a claim under 42 U.S.C. § 1983, a plaintiff must prove two elements. First, he must demonstrate that he was deprived of a right secured by the Constitution or the laws of the United States, and second, he must demonstrate that the deprivation was caused by a person acting under color of state law. *Redding v. St. Edward*, 241 F.3d 530, 532 (6th Cir. 2001).

Plaintiffs' First Amended Complaint alleges George, Lucas and other unidentified Defendants falsely arrested Webb after forcing their way into Webb's residence. In support of his summary judgment motion based on qualified immunity, George submits the arrest warrant issued November 9, 2005, by a United States District Court Magistrate Judge, along with his aforementioned affidavit, disavowing any unlawful activity. Webb offers no evidence implicating George in any of the alleged unlawful activity and Webb offers no evidence that George participated in the controlled buy. The only facts in the First Amended Complaint

8

naming George all involve his activities during Webb's arrest; there are no allegations George provided an affidavit in support of the arrest warrant or deceived the Magistrate Judge to induce the issuance of the arrest warrant.

George's Motion for Summary Judgment and affidavit in support disavows any involvement in the alleged conspiracy to frame Webb. The First Amended Complaint states no facts implicating George in the underlying drug investigation, controlled buy or tampering with evidence. The allegations involving George pertain to his presence at the search for and arrest of Webb pursuant to an arrest warrant issued by a United States Magistrate Judge on November 9, 2005. George's affidavit attests he did not arrest Webb and did not search his residence. Webb offers no evidence in response to create a genuine issue of material fact regarding George's participation in Webb's arrest or the search of his residence.

Finally, police officers are permitted to search a home incident to an arrest, "as a precautionary matter and without probable cause or a reasonable suspicion, look in closets and other spaces immediately adjoining the place of arrest from which an attack could be immediately launched." *United States v. Colbert,* 76 F.3d 773, 776 (6th Cir. 1996)(quoting *Maryland v. Buie,* 494 U.S. 325, 334 (1990). The First Amended Complaint alleges the arrest took place inside Webb's home but alleges no further facts that would support a constitutional violation arising from the search of Webb's home after the arrest. The First Amended Complaint does not articulate what was searched nor what areas of the house were searched. Therefore, for the lack of Webb's supporting or responsive evidence, the Court grants Defendant George's Motion for Summary Judgment on all of Webb's federal claims.

**<u>Sergeant Matt Mayer, Captain Larry Faith and Detective Chuck Metcalf</u>**

Mayer, Faith and Metcalf are all Richland County Sheriff's Department employees. Plaintiffs' First Amended Complaint does not allege any facts describing the specific conduct of the above named individuals that violated Webb's constitutional rights or constitute tortious conduct.  Rather, the First Amended Complaint ascribes a laundry list of generalized allegations against all the named Defendants, including fabricating evidence, destroying or withholding evidence, conspiring to deprive Webb of his constitutional rights, coaching or manipulating witnesses, manipulating or tampering with audio recordings and violating Webb's Fourth, Fifth, Sixth, Eighth and Fourteenth Amendment rights, causing Webb to be prosecuted and incarcerated.

The affidavits of Defendants Mayer, Faith and Metcalf attest they did not coach witnesses nor did they observe others doing the same.  They did not offer testimony before a grand jury regarding the controlled buy nor did they determine what charges to bring against Webb.  Metcalf and Faith provided surveillance and security during the controlled drug buy but never identified Webb as being present at the buy.  Faith also contends he had no direct personal involvement in the controlled buy.

Though not titled a 56(f) Motion, Plaintiffs' Opposition Brief seeks additional discovery. Plaintiffs attach several exhibits to their brief, including various newspaper articles which cannot be considered by this Court as competent evidence under Rule 56.  Plaintiffs also attach an affidavit of Webb, which merely states his age, his role as Plaintiff in the litigation, his subsequent arrest and indictment for allegedly selling dope to DEA agent Lucas, and that the charges were ultimately dropped.  Finally, Webb attests, "the criminal charges against me were

false. I never sold drugs to Lee Lucas." Plaintiffs further attach the affidavits of LaTonya Bray, wife of Jarrell Bray, the latter a confidential informant involved in the controlled buy. The affidavit relates statements allegedly made by Jarell to LaTonya; hearsay statements that cannot be considered by the Court. Furthermore, Plaintiffs attach an affidavit of Jeremiah L. Conrad, who asserts he was the individual who participated in the controlled buy at the behest of Jarrell Bray. Conrad attests he acted as the seller of the drugs and that Bray told the "white guy" buying the drugs that Conrad's name was "Josh."

The Opposition Brief also attached an affidavit by Plaintiffs' attorney, Debra Loevy-Reyes, wherein she attests that based on newspaper reports and interviews conducted with other Mansfield citizens, she believes that discovery will reveal the following evidence:

- Defendants engaged in an illegal conspiracy;
- doctored audiotapes of alleged undercover drug buys demonstrating events were fabricated by Defendants;
- doctored videotapes of alleged undercover drug buys;
- doctored videotapes demonstrating evidence of alleged undercover drug buys were fabricated by Defendants;
- deposition of confidential informant Jarrell Bray admitting he conspired with Defendants to frame Webb;
- deposition testimony of Defendants in which they admit misconduct, impeach their denials of misconduct or invoke their Fifth Amendment rights;
- deposition testimony of stand-in drug purchasers admitting their role in conspiring with Defendants to frame innocent people for drug crimes;

11

- deposition testimony of third parties with knowledge of Defendants' role in the frame-up conspiracy and abuses;
- police reports documenting the conspiracy and leading to the identification of other witnesses or impeachment of Defendants' claims of non involvement;
- DEA reports documenting the conspiracy, identifying witnesses and impeaching Defendants claims;
- and other evidence.

With respect to the above named Defendants, Webb must first demonstrate Defendants deprived him of a right guaranteed by the United States Constitution.  Apart from the specific factual allegations against Lucas and George discussed previously, the First Amended Complaint fails to allege facts specific to the named Defendants, the roles they played, the evidence they possessed or tampered with, (aside from audiotapes), what witnesses were coached and what they were coached or manipulated to say. Webb attaches no competent evidence contradicting the affidavits of Defendants.  Therefore, the Court must consider whether Webb has stated, with sufficient specificity, the need for additional discovery, the particular discovery sought and how it would aid in defeating Defendants summary judgment motions.

**Federal Rule of Civil Procedure 56(f)**

Plaintiff has asked this Court for discovery pursuant to Rule 56(f) which states,

**(f) When Affidavits Are Unavailable.** If a party opposing the motion shows by affidavit that, for specified reasons, it cannot present facts essential to justify its opposition, the court may:

**(1)** deny the motion;
**(2)** order a continuance to enable affidavits to be obtained, depositions to be

>taken, or other discovery to be undertaken; or
>**(3)** issue any other just order.

"Bare allegations or vague assertions of the need for discovery are not enough" under Rule 56(f). *Everson v. Leis,* 556 F.3d 484, 493 (6th Cir. 2009) *quoting Summers v. Leis,* 368 F.3d 881, 887 (6th Cir. 2004). To satisfy Rule 56(f) requirements Plaintiff has to describe with "some precision the materials he hopes to obtain with further discovery, and exactly how he expects those materials would help him in opposing summary judgment." *Id.* (quoting *Simmons Oil Corp. v. Tesoro Petroleum Corp.,* 86 F.3d 1138, 1144 (Fed.Cir.1996)).

In two cases alleging the same claims filed by the same counsel for Plaintiffs against many of the same Defendants, Judge Gaughan in *Westerfield v. USA, et al.* 1:07cv3518 (N.D. Ohio 2008) and Judge Oliver in *Brown v. USA,* 1:07cv3750 (N.D. Ohio 2008) arrived at opposite conclusions on qualified immunity. Judge Gaughan determined Plaintiffs' counsel's affidavit failed to allege with the required specificity how the materials sought would assist in defeating Defendants' motions for summary judgment. Judge Gaughan subsequently granted summary judgment for all Defendants. Judge Oliver ruled on much the same facts but with a more detailed affidavit from Plaintiffs' counsel, determined the affidavit satisfied the requirements of 56(f) and denied Defendants summary judgment motions, permitting discovery to proceed. Both cases are currently on appeal.

In the matter before this Court, Plaintiffs' counsel provided an affidavit nearly identical to the affidavit provided in support of additional discovery in the case before Judge Oliver. However, with the exception of Defendant George, the First Amended Complaint is silent with

13

respect to any specific fact as to how the named State Defendants conspired to deprive Webb of his constitutional rights.  The evidence demonstrates that Defendant Lucas was the only Defendant in the vehicle at the time of the controlled buy.  The affidavit of Jeremiah Conrad, attached to Plaintiffs' Opposition Brief, confirms that only one individual aside from Conrad and Bray was involved in the drug buy.  There is no evidence supporting Plaintiffs' allegation that witnesses were tampered with or coached.  Plaintiffs' Attorney's affidavit for discovery under 56(f) fails to state with the requisite specificity how the evidence sought would implicate George in the collection, retention and subsequent tampering with, or fabrication of, evidence arising from the controlled buy used to incarcerate and indict Webb.

Fabricating evidence, conspiring to fabricate evidence and detaining an individual without probable cause are clearly established violations of Plaintiffs' Fourth and Fourteenth Amendment rights. "It is well established that a person's constitutional rights are violated when evidence is knowingly fabricated and a reasonable likelihood exists that the false evidence would have affected the decision of the jury."*Gregory v. City of Louisville,* 444 F.3d 725, 737 (6th Cir. 2006) citing *Stemler v. City of Florence,* 126 F.3d 856, 872 (6th Cir.1997). "Additionally, the burden is on the plaintiff to allege and prove that the defendant violated a clearly established constitutional right." *Spurlock v. Satterfield,* 167 F.3d 995, 1005 (6th Cir 1999).  Therefore, Plaintiffs can show that, in the abstract, Webb has stated claims for violations of his constitutional rights.

The moving Defendants do not contest that the claims against them in Plaintiffs' First Amended Complaint state violations of Webb's constitutional rights or that those rights were clearly established at the time of the incidents in question.  Defendants attack the evidence of

14

wrongdoing. All provide affidavits denying coaching or manipulating witnesses; knowledge of anyone else doing so; and deny having any role in deciding to prosecute. Again, none of the evidence provided by Plaintiffs support the sparse factual allegations against the above named State Defendants. Plaintiffs' attorney attests to interviewing "a number of Mansfield citizens who claim they, like Plaintiff, were falsely implicated for federal drug offenses..." but does not attach any affidavits of those citizens. Aside from the audiotapes allegedly tampered with or fabricated, Plaintiffs do not discuss what other evidence was tampered with, destroyed or fabricated. While Conrad's affidavit alleges he stood in for Webb at the controlled drug buy, it does not allege any Defendants were aware he was not Joshawa Webb. His affidavit attests only that Bray asked him to act like he was the seller of drugs to a guy who Bray sold "bad dope" to previously, so Bray could not be the seller himself.

The Supreme Court of the United States has recently addressed the heightened pleading requirements as first outlined in *Bell Atlantic Corp. v. Twombley,* 550 U.S. 544 (2007). The Supreme Court in *Ashcroft v. Iqbal,* ---- U.S. -----, 129 S. Ct. 1937, 1949 (2009) held, " a pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" quoting *Twombley* at 555. The Supreme Court in *Iqbal* went on to say, " [n]or does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal* at 1949, quoting *Twombley* at 557.

Although the Court is cognizant that the arguments before it are brought via motions for summary judgment, the rationale of *Iqbal* and *Twombley* militate strongly in favor of summary judgment. Without more specific factual allegations and supporting evidence of Defendant Mayer's, Faith's, Metcalf's and George's roles in the investigation, what witnesses were

15

coached, or what evidence was tampered with and who had possession of or created evidence used to indict Webb, the Court finds Plaintiffs have failed to allege and demonstrate, with competent evidence, that Defendants Faith, George, Metcalf and Mayer's actions violated a constitutional right of Webb's.  Furthermore, Plaintiffs' attorney's affidavit does not state with sufficient specificity the evidence she seeks and exactly how that evidence will defeat these particular Defendants' summary judgment motions given the sparse factual allegations contained in the First Amended Complaint.  Because the First Amended Complaint contains only generalized allegations of unlawful conduct attributed to all Defendants with no specific, factually enhanced allegations against Faith, Metcalf and Mayer, and because the factual allegations against George are limited to the execution of the arrest warrant whose validity is unchallenged in the First Amended Complaint, the Court finds Plaintiffs are not entitled to 56(f) discovery. " [I]t is well settled that 'Rule 56(f) does not condone a fishing expedition' where a plaintiff merely hopes to uncover some possible evidence of a constitutional violation." *Duffy v. Wolle,* 123 F.3d 1026, 1041 (8th Cir. 1997) quoting *Gardner v. Howard,* 109 F.3d 427, 431 (8th Cir.1997).

Therefore, the Court  grants the Motions of Defendants Faith, Metcalf, George and Mayer for Summary Judgment based on qualified immunity for alleged violations of Webb's constitutional rights.

IT IS SO ORDERED.

 S/Christopher A. Boyko
CHRISTOPHER A. BOYKO
United States District Judge

September 15, 2009