**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **JOSHAWA WEBB, ET AL.,** | ) | **CASE NO.1:07CV3290** |
| | ) | |
| Plaintiff, | ) | **JUDGE CHRISTOPHER A. BOYKO** |
| | ) | |
| Vs. | ) | |
| | ) | |
| **UNITED STATES OF AMERICA,** | ) | **OPINION AND ORDER** |
| **ET AL.,** | ) | |
| | ) | |
| Defendant. | ) | |

**CHRISTOPHER A. BOYKO, J:**

This matter is before the Court on the Defendant Lee Lucas' Motion for Summary Judgment (ECF #68). Plaintiffs have not filed an opposition to Lucas' Motion, therefore, the motion is unopposed. For the following reasons, the Court grants Lucas' Motion.

**Background**

The case arises from a First Amended Complaint filed by Joshawa Webb ("Webb"), alleging constitutional violations stemming from his arrest and incarceration for an alleged drug conspiracy. Webb contends he was innocent of the charges and his arrest and incarceration were the result of wrongful acts by Defendants. The Court finds Plaintiffs' First Amended Complaint

1

does not allege any constitutional violation claims on behalf of Webb's fellow Plaintiffs, to wit; his mother Juanita Brooks, his wife Lakisha, his unnamed adolescent sister or his child; further, Webb has not provided any evidence that he is a guardian authorized to bring suit on behalf of his adolescent sister. Therefore, this opinion's discussion on qualified immunity applies solely to the claims of Webb.

**Defendants' Version of the Facts**

The matter before the Court arises from Webb's arrest in connection with a drug investigation.  According to Defendants' affidavits in this suit, on November 9, 2005, Plaintiff Joshawa Webb was indicted for violations of federal criminal drug laws. The investigation began in December of 2004 due to a murder that occurred in Richland County.  The Richland County Sheriff's investigation of the murder indicated it was drug related and, as a result, the Richland County Sheriff's Department began an investigation of drug trafficking in Richland County.  At the request of the Richland County Sheriff's Department in late August or early September of 2005, the Drug Enforcement Agency ("DEA") Task Force began working collaboratively with the Richland County Sheriff's Department in investigating drug trafficking in and around Richland County.

As part of the investigation, on October 13, 2005, Richland County Sheriff's Department Detective Chuck Metcalf monitored and recorded a phone conversation between Jarrell Bray, a paid DEA informant, who was also a confidential informant used previously by the Richland County Sheriff's Department, and a man Bray identified as Joshawa Webb, wherein Bray relayed he had $2,000.00 to purchase crack the next day.

On October 14, 2005, Detective Metcalf, Richland County Sheriff's Department Sgt.

Matt Mayer, DEA Special Agent Lee Lucas ("Lucas"), DEA Task Force Officer Tom Verhiley and DEA Special Agent Robert Cross met at the Richland County Sheriff's Office to arrange a controlled buy of two and a half ounces of crack cocaine from the person identified by Bray as Joshawa Webb. That same day Lucas, operating undercover, contacted Bray, who informed Lucas that Webb was with him. After securing money for the buy from federal government funds wherein the serial numbers were previously recorded, Lucas, wearing a wire, along with Detective Metcalf, Agent Cross, Sgt. Mayer and Agent Verhiley, proceeded to the location of the controlled buy. Lucas drove in a separate vehicle and pulled into a gas station next to a vehicle with tinted windows. The other agents and Richland officers were unable to observe the vehicles from their monitoring location. Lucas later informed Agent Cross that he entered the vehicle with Bray where a large white male was seated in the front passenger seat. Bray identified the individual as Webb. Lucas exchanged $2600.00 dollars for approximately 70 grams of crack cocaine. After the transaction, Bray returned to the Richland County Sheriff's office for a debriefing.

In March of 2006, Webb was indicted under a superceding indictment for the alleged sale of crack cocaine as described above. Sometime in 2007 Bray was arrested and later recanted his previous statements regarding the controlled buy allegedly involving Webb. As a result, the government moved to dismiss the charges against Webb; and on July 16, 2007, the Court granted the government's motion and dismissed the superceding indictment against Webb. On October 24, 2007, Webb filed his Complaint with this Court.

**Plaintiffs' Complaint**

Webb contends he was wrongfully arrested, indicted and incarcerated for nearly twenty-

one months on fabricated evidence. Bray confessed to fabricating evidence to frame innocent people, including Webb. Webb alleges audiotape evidence was tampered with or fabricated by Defendants.

Plaintiffs' First Amended Complaint contends the following: Webb never met Lucas prior to being indicted and was not involved in the alleged drug ring. On November 9, 2005, Defendants Lucas, George and other unidentified individuals kicked in the door of the home of Juanita Brooks, Webb's mother, looking for Webb. They attempted to force Webb's adolescent sister to accompany them. Lucas, George and other unidentified personnel then forced their way into Webb's home where they arrested Webb in the presence of Webb's wife, Lakeisha, and infant child. Plaintiffs contend that Defendants then unlawfully searched Webb's home, where no evidence of criminal activity was found.

The First Amended Complaint further states that two experts have reviewed the audio recordings used to indict Webb and found they were tampered with or fabricated. According to the First Amended Complaint, Bray admitted the controlled buy was simulated and recorded to make it sound like Webb was involved in the drug ring. The First Amended Complaint further alleges Defendants fabricated, destroyed and/or withheld evidence that would have exonerated Webb and alleges Defendants coached and manipulated witnesses and withheld doing so from prosecutors. The First Amended Complaint alleges Defendants violated Webb's rights under the Fourth, Fifth, Sixth, Eighth and Fourteenth Amendments; Defendants conspired to deprive Webb of his constitutional rights; the municipal defendants failed to train their employees; and, in addition, their policies and practices violated Webb's constitutional rights, and finally, alleges violations of Ohio state law for malicious prosecution and intentional infliction of emotional

distress.

## **STANDARD OF REVIEW**

In accordance with Federal Rule of Civil Procedure 56(c), summary judgment is appropriate when no genuine issues of material fact exist and the moving party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *LaPointe v. United Autoworkers Local 600*, 8 F.3d 376, 378 (6th Cir. 1993).  The burden of showing the absence of any such genuine issues of material facts rests with the moving party:

> [A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrates the absence of a genuine issue of material fact.

*Celotex*, 477 U.S. at 323.  A fact is material only if its resolution might affect the outcome of the lawsuit under the governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

Once the moving party has satisfied its burden of proof, the burden then shifts to the nonmoving party pursuant to Federal Rule of Civil Procedure 56(e), which provides:

> When a motion for summary judgment is properly made and supported, an opposing party may not rely merely on allegations or denials in its own pleading; rather, its response must-by affidavits or as otherwise provided in this rule- set out specific facts showing a genuine issue for trial.  If the opposing party does not so respond, summary judgment should, if appropriate, be entered against that party.

In ruling upon the motion, the court must afford all reasonable inferences and construe the evidence in the light most favorable to the nonmoving party. *Cox v. Kentucky Dept. of Transp.*, 53 F.3d 146, 150 (6th Cir. 1995); *United States v. Hodges X-Ray, Inc.*, 759 F.2d 557, 562 (6th Cir. 1985).  However, summary judgment should be granted if the party bearing the

burden of proof at trial does not establish an essential element of its case. *Tolton v. American Biodyne, Inc.*, 48 F.3d 937, 941 (6th Cir. 1995) (citing *Celotex*, 477 U.S. 317). Furthermore, this Court is not required "to search the entire record to establish that it is bereft of a genuine issue of material fact." *Betkerur v. Aultman Hospital Ass'n.,* 78 F.3d 1079, 1087 (6th Cir. 1996). "Rather, the burden falls on the non-moving party to designate specific facts or evidence in dispute." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249-250 (1986).

**42 U.S.C. §1983, *Bivens* and Qualified Immunity**

In order to prevail on a claim under 42 U.S.C. § 1983, a plaintiff must prove two elements**.** First, he must demonstrate that he was deprived of a right secured by the Constitution or the laws of the United States, and second, he must demonstrate that the deprivation was caused by a person acting under color of state law. *Redding v. St. Edward*, 241 F.3d 530, 532 (6th Cir. 2001).

When the cause of action concerns violations of constitutional rights by federal agents sued in their individual capacities the United States Supreme Court in *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics,* 403 U.S. 388, 390-97 (1971), implied a right to damages for Fourth Amendment violations. Since then the Supreme Court has extended *Bivens* twice, " to provide an otherwise nonexistent cause of action against *individual officers* alleged to have acted unconstitutionally, or to provide a cause of action for a plaintiff who lacked *any alternative remedy* for harms caused by an individual officer's unconstitutional conduct." *Correctional Services Corp. v. Malesko,* 534 U.S. 61, 70 (2001). *Bivens* acts as a counterpart to 42 U.S.C. §1983 actions where the former is the proper vehicle for bringing constitutional violation suits against federal actors while the latter is used for suits against state actors. *Id* at

66-67. A *Bivens* action permits the defense of qualified immunity, the analysis of which is identical under either *Bivens* or §1983. *Wilson v. Layne,* 526 U.S. 603, 609 (1999). "Government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald,* 457 U.S. 800, 818 (1982) "Qualified immunity 'is an affirmative defense that must be pleaded by a defendant official.'" *Harlow*, 457 U.S. 800, 815 (1982). But qualified immunity "is an immunity from suit rather than a mere defense to liability." *Hunter v. Bryant*, 502 U.S. 224, 227 (1991) (quoting *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985)). "Immunity ordinarily should be decided by the court long before trial." *Hunter* at 228 (citing *Mitchell* at 527-29). "Unless the plaintiff's allegations state a claim of violation of clearly established law, a defendant pleading qualified immunity is entitled to dismissal before the commencement of discovery." *Mitchell* at 526 (citing *Harlow* at 818). The issue of qualified immunity must be addressed at the earliest possible point in the litigation. *Saucier v. Katz,* 533 U.S. 194, 200-201 (2001), *overruled on other grounds by Pearson v. Callahan*, ___ U.S. ___, 129 S.Ct. 808, 818 (2009). *Siegert v. Gilley,* 500 U.S. 226, 232 (1991). The Supreme Court has stated that, "[u]ntil this threshold immunity question is resolved, discovery should not be allowed. " *Harlow*, 457 U.S. at 819. A district court should resolve the immunity question before permitting discovery. *Crawford-El v. Britton,* 523 U.S. 574, 598 (1998). Indeed, one of the core purposes of the immunity is to shield officials from "the burdens of broad-reaching discovery." *Crawford-El,* 523 U.S. at 588 (quoting *Harlow*, 457 U.S. at 817-818).

The analysis of a qualified immunity claim is distinct from the merits of the underlying

claim itself. *Saucier,* 533 U.S. at 204; *Dunigan v. Noble,* 390 F.3d 486, 491 n.5 (6th Cir. 2004). Qualified immunity is a purely legal question which must be determined early in the proceedings. *Saucier,* 533 U.S. at 200; *Siegert,* 500 U.S. at 232.

The defendants bear the initial burden of coming forward with facts which suggest that they were acting within the scope of their discretionary authority at the time in question. *Rich v. City of Mayfield Heights,* 955 F.2d 1092, 1095 (6th Cir. 1992). The burden then shifts to the plaintiff to show that the defendants are not entitled to qualified immunity. *Untalan v. City of Lorain,* 430 F.3d 312, 314 (6th Cir. 2005); *Cartwright v. City of Marine City,* 336 F.3d 487, 490-491 (6th Cir. 2003).

## ANALYSIS

### Lucas' Motion for Summary Judgment

Defendant Lucas, has been an agent with the DEA for over sixteen years, has participated in over a thousand drug cases and investigations, and has worked in an under cover capacity on over one hundred drug cases including this case. Lucas moves for summary judgment based on qualified immunity on Plaintiffs' *Bivens* claims against Lucas because Webb cannot demonstrate Lucas' actions regarding Webb's criminal investigation and arrest violated Webb's constitutional rights. Furthermore, Lucas contends Plaintiffs' claims lack evidentiary support and are merely conclusory allegations lacking reasonable particularity.

Attached to his summary judgment motion, Lucas provides a number of exhibits in support of his contention that Bray was approved as an informant by the proper DEA authorities, had been used by Richland Sheriff's department before, and has been indicted for falsely implicating Webb amongst others in the drug conspiracy. In short, Lucas contends the evidence

demonstrates the controlled buy was made from Webb and there is no evidence Lucas fabricated evidence.

The only non conclusory facts alleged in Plaintiffs' First Amended Complaint are stated as follows:

> In or about October of 2005, Joshawa Webb was falsely implicated in a drug conspiracy. According to the fabricated charges in Mr. Webb's criminal case, he allegedly sold Defendant Lee Lucas crack cocaine.
>
> In reality, Mr. Webb never met Defendant Lee Lucas prior to being charged with this crime. Mr. Webb was not involved in the alleged drug ring for which he was arrested.
>
> On November 9, 2005 Lee Lucas, Dan George, and yet-unidentified Defendants kicked in the door of Juanita Brooks' home. In an effort to locate Mr. Webb, Lucas and Dan George attempted to force Mr. Webb's adolescent sister to accompany them.
>
> Later on or about November 9, 2005, Lee Lucas, Dan George, and yet-unidentified Defendants forced their way into Mr. Webb's residence with their guns drawn and falsely arrested Mr. Webb. Lakeisha Webb and Kalib Webb, who was 15 months old at the time, were present for those events.
>
> After arresting Mr. Webb, the Defendants searched the Webb home without lawful justification. The search did not uncover evidence of any crime.

The Sixth Circuit has held "that a person's constitutional rights are violated when evidence is knowingly fabricated and a reasonable likelihood exists that the false evidence would have affected the decision of the jury." *Gregory v. City of Louisville,* 444 F.3d 725, 737 (6th Cir. 2006) citing *Stemler v. City of Florence,* 126 F.3d 856, 872 (6th Cir.1997). However, " the

9

burden is on the plaintiff to allege and prove that the defendant violated a clearly established constitutional right." *Spurlock v. Satterfield,* 167 F.3d 995, 1005 (6th Cir 1999). As the Supreme Court in *Saucier* held, in order to overcome a qualified immunity motion, a plaintiff must show (1) the facts, taken in the light most favorable to plaintiff, "show the officer's conduct violated a constitutional right," and (2) the right was "clearly established." *Saucier* 533 U.S. at 201.

In this case the Court is presented with unrebutted evidence by Lucas, as Plaintiffs have not opposed his Motion. Lucas, in support of his Motion, cites to co-defendant Cross' declaration, a Cleveland.com news article, his own trial testimony at the criminal trial of a co-defendant of Webb, along with the trial testimony of co-defendant Metcalf, a confidential operative agreement, confidential source agreement, two DEA reports of the controlled buy, the indictment and superceding indictment of Webb, court appointed expert's report of the validity of the audiotapes at issue in this case provided in Webb's criminal case, Bray's information and plea and various cases and court orders.

Aside from the Cross declaration, none of the evidence is authenticated and there is no affidavit by Lucas or his attorneys as to the authenticity of the evidence offered in support of Lucas' Motion. However, Lucas does cite to the affidavit of co-defendant Cross as evidence of the following:

1) that Richland County Sheriff's employees recorded a conversation between Bray and Webb setting up a drug buy;

2) the following day Lucas, operating undercover, met Bray at a gas station to purchase drugs in a controlled buy from a person identified by Bray as Webb.

3) Bray introduced the person in the car as Webb wherein the person identified as Webb sold crack cocaine to Lucas.

4) Defendant Metcalf made the digital recording of the pre-controlled buy phone conversation between Bray and Webb.

5) Defendants Metcalf and Cross made the digital recording of the controlled buy.

6) Lucas never had custody of the digital recording of the controlled buy.

7) Lucas and Cross maintained custody of the digital recording of the pre-controlled buy phone conversation between Bray and Webb setting up the controlled buy.

8) Cross declares that at no time during the arrest or prosecution of Webb was he aware of anyone who falsely implicated Webb or fabricated evidence.

Plaintiffs have not filed a brief in opposition to the summary judgment of Lucas. Defendants George, Faith, Mayer, Metcalf, Ansari and Cross all filed individual Motions for Summary Judgment on November 7, 2008.  On November 17, 2008,  Lucas filed his Motion for Summary Judgment.  On November 19, 2008, Plaintiffs filed a combined response to the motions of Ansari, Cross, Faith, George, Mayer and Metcalf's motions.  On November 21, 2008, Plaintiffs filed an Amended Opposition to the above named Defendants.  Both times Plaintiffs did not indicate in the caption or body of their response and amended response that the brief was intended to oppose Lucas' Motion.  On May 15, 2009, Plaintiffs filed a Motion for Leave to amend their 56(f) Affidavit in response to Defendants' Motions for Summary Judgment which the Court denied on September 29, 2009, as no opposition brief was filed in response to Lucas' Motion for Summary Judgment.  It was only after the Court denied the motion to amend the affidavit that Plaintiffs moved to respond to Lucas' motion.  The Court denied Plaintiffs' motion.

11

(ECF # 90).

Although Lucas' motion is unopposed and uncontested, the Court must still determine whether he is entitled to summary judgment as a matter of law.  The undisputed evidence demonstrates that Webb was identified as the seller of the drugs by Bray, not Lucas.  Lucas did not set up the controlled buy; Bray and Webb did while Metcalf monitored and recorded the phone conversation.  Bray introduced Lucas to a man Bray identified as Webb.  In short, the evidence before the Court does not point to any constitutional violation by Lucas prior to or during the controlled buy.  Furthermore, Lucas' unopposed evidence demonstrates his actions concerning the controlled buy were reasonable and entitle him to qualified immunity pursuant to *Saucier*.

With respect to fabricating evidence, the Court finds the evidence again fails to support a finding of a constitutional violation.  Lucas did not create or record the audiotapes of the conversation between Bray and the person Bray identified as Webb setting up the controlled buy or the recording of the controlled buy itself.  Lucas did not have custody of the controlled buy recording and had joint custody with Cross of the recording of the phone conversation setting up the buy.  Cross' declaration, to which Lucas cites, states neither Cross nor anyone else, to his knowledge, fabricated evidence.  Again, Plaintiffs have offered no evidence contra the evidence cited to by Lucas.  Therefore, the Court finds no genuine issue of material fact and Lucas is entitled to summary judgment as a matter of law on Plaintiffs' allegations of evidence tampering.

Because the Court has determined that Lucas did not deprive Webb of a constitutional right by his actions preceding and during the controlled buy, nor with his handling of evidence, the Court cannot find that Lucas' arrest of Webb violated Webb's constitutional rights.  Based on

the undisputed facts before the Court, Lucas sold drugs to a man identified by an experienced, paid DEA informant as Webb in a controlled buy.  Therefore, probable cause existed to effect his arrest.  The First Amended Complaint alleges no details surrounding the arrest other than a bare allegation that it was false presumably in light of the generalized allegations that it was based on fabricated evidence.  Because Webb has failed to offer evidence supporting his fabrication claim, the Court cannot find Lucas fabricated evidence, or had some knowledge that there was no probable cause to arrest Webb.  Therefore, the Court finds Webb has not demonstrated Lucas violated his constitutional rights when he arrested Webb.

Finally, Webb alleges the search of his home at the time of his arrest was unlawful.  The First Amended Complaint alleges the arrest took place inside Webb's home but alleges no further facts that would support a constitutional violation arising from the search of Webb's home after the arrest.  The First Amended Complaint does not articulate what was searched nor what areas of the house were searched.  Police officers are permitted to search a home incident to an arrest, "as a precautionary matter and without probable cause or a reasonable suspicion, look in closets and other spaces immediately adjoining the place of arrest from which an attack could be immediately launched."  *United States v. Colbert,* 76 F.3d 773, 776 (6th Cir. 1996), (quoting *Maryland v. Buie,* 494 U.S. 325, 334 (1990)).  Because Webb has not articulated how the search violated his constitutional rights or that the search was unreasonable, he has failed to demonstrate that Lucas is not entitled to qualified immunity. Therefore, the Court grants summary judgment to Lucas on all of Webb's constitutional claims.

**The Allegations in the First Amended Complaint Fail as a Matter of Law**

"A necessary concomitant to the determination of whether the constitutional right asserted by a plaintiff is 'clearly established at the time the defendant acted is the determination of whether the plaintiff has asserted a violation of a constitutional right at all." *Rich* at 1095 (quoting *Siegert*, 500 U.S. at 226). "In ruling on a summary judgment motion, a district court will consider the allegations put forth by the plaintiff, and '[u]nless the plaintiff's allegations state a claim of violation of clearly established law, a defendant pleading qualified immunity is entitled to dismissal before the commencement of discovery.'" *Rich* at 1095, (quoting *Mitchell,* 472 U.S. at 526). As the Sixth Circuit has consistently held, "It is not enough for a complaint under § 1983 to contain mere conclusory allegations of unconstitutional conduct by persons acting under color of state law. Some factual basis for such claims must be set forth in the pleadings." *Chapman v. City of Detroit,* 808 F.2d 459, 465 (6th Cir. 1986) citing *Place v. Shepherd,* 446 F.2d 1239 (6th Cir. 1971). The Sixth Circuit in *Chapman* went on to say:

> There is a sound reason for requiring that a civil rights action against a government official or employee state a claim in terms of facts rather than conclusions. When a government employee is sued, if no factual allegations are made, discovery and perhaps even trial may be required to demonstrate that the claim has no merit. Such activities require the government defendant and others such as government attorneys involved in defense of the claim to divert their attention from their usual activities and to become involved in the litigation to the neglect of their assigned duties.

*Id.*

Here, the First Amended Complaint fails to state with sufficient factual basis what acts of Lucas violated Webb's constitutional rights. Rather, the First Amended Complaint only states generalized allegations of evidence tampering by all Defendants and states that Lucas falsely arrested Webb. It also states Defendants, including Lucas, unlawfully searched Webb's home.

The Supreme Court of the United States has recently addressed the heightened pleading

requirements as first outlined in *Bell Atlantic Corp. v. Twombley,* 550 U.S. 544 (2007). The Supreme Court in *Ashcroft v. Iqbal,* ---- U.S. -----, 129 S. Ct. 1937, 1949 (2009) held, " a pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" quoting *Twombley* at 555. The Supreme Court in *Iqbal* went on to say, " [n]or does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal* at 1949, quoting *Twombley* at 557.

Although the Court is cognizant that the arguments before it are brought via motions for summary judgment, the rationale of *Iqbal* and *Twombley* militate strongly in favor of summary judgment, particularly in light of a pre-discovery Motion for Summary Judgment based on qualified immunity. Without more specific factual allegations of Lucas' role in the investigation, what witnesses were coached, or what evidence was tampered with, the Court finds Plaintiffs have failed to allege with requisite factual basis, what actions by Lucas violated Webb's constitutional rights.

Finally, Plaintiffs' conspiracy claim wholly fails to state a claim as a matter of law. As the Sixth Circuit has stated, "[i]t is well-settled that conspiracy claims must be pled with some degree of specificity and that vague and conclusory allegations unsupported by material facts will not be sufficient to state a claim under § 1983." *Gutierrez v. Lynch*, 826 F.2d 1534, 1538 (6th Cir.1987).

Because the First Amended Complaint contains only generalized allegations of unlawful conduct attributed to all Defendants with no material facts specific to an unconstitutional act by Lucas, and because the First Amended Complaint states only a laundry list of what constitutional amendments were violated without alleging specifically what acts by Lucas violated Webb's

15

rights, the Court finds Plaintiffs' First Amended Complaint fails to state a claim with the requisite facts as required by *Chapman* and *Iqbal*.

Therefore, the Court grants Lucas' Motion for Summary Judgment based on qualified immunity for alleged violations of Webb's constitutional rights.

The Court, having granted the United States' motion to substitute itself for the federal defendants on Plaintiffs' common law tort claims, grants Lucas' Motion for Summary Judgment asking the Court to dismiss those claims against him based on the substitution of the United States.

Finally, Lucas motions the Court to dismiss the common law claims against him brought by Webb's spouse, mother and child as derivative.  Again, his Motion is unopposed; and based Webb's failure to establish that Lucas violated his constitutional rights and because Webb's tort claims cannot be maintained against Lucas as the United States is substituted for him on those claims, the Court finds Plaintiffs' derivative claims must be dismissed as well.

Therefore, the Court grants Defendant Lee Lucas' unopposed Motion for Summary Judgment on all Plaintiffs' claims.

IT IS SO ORDERED.


          S/Christopher A. Boyko
          CHRISTOPHER A. BOYKO
          United States District Judge

October 19, 2009