UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

```
_____
                                   :
JOSHAWA WEBB,                      :   CASE NO. 1:07-CV-03290
                                   :
                                   :   JUDGE CHRISTOPHER BOYKO
            Plaintiff,             :
                                   :
       v.                          :
                                   :
                                   :
LEE MICHAEL LUCAS, et al.          :
                                   :
                                   :
            Defendants.            :
_____:
```

**MEMORANDUM OF LAW IN SUPPORT OF
DEFENDANT LEE LUCAS' SUPPLEMENTAL MOTION TO DISMISS
THE COMPLAINT ON QUALIFIED IMMUNITY GROUNDS**

**Preliminary Statement**

This Memorandum of law is submitted by Defendant Lee Michael Lucas in support of his supplemental motion to dismiss the Complaint of plaintiff Joshawa Webb based upon the affirmative defense of qualified immunity. The facts relevant to this motion are set forth in the accompanying Declaration of defendant Lucas, as well as the exhibits attached thereto, and will not be repeated here. The facts set forth herein are intended to supplement the facts in the Lucas Declaration.

**The Webb Complaint**

According to plaintiff's Complaint, he was not involved in the drug conspiracy in which he was charged, and that an audio recording used by the defendants was "either tampered with or

1

completely fabricated." He further alleges that "there was not a single piece of evidence linking [him] to the crime with which he was charged."

The Complaint specifically alleges that the defendants "fabricated evidence which implicated [him] in the drug ring, and destroyed and/or otherwise withheld from the prosecutors and from [him] evidence which would have helped exonerate him …" It further alleges that the defendants "coached and manipulated" unidentified witnesses, presumably Jerrell Bray, the confidential informant, and concealed these deceptions from the prosecutors.

### 2. The Lucas Criminal Indictment and Trial Evidence

Contrary to these claims in the Complaint, both the criminal Indictment of defendant Lee Lucas and the evidence adduced at the Lucas criminal trial, including the testimony of Bray himself, demonstrated that Bray acted completely <u>alone</u> in his fabrications of evidence, and that there was no conspiracy between Bray and any of the law enforcement officers who worked with him, including Lucas.

The Indictment charged Lucas with various counts of perjury, obstruction of justice, making false statements and civil rights violations concerning his involvement in the Mansfield cases, but there was not alleged to be any overlap between the crimes committed by Bray and those charged against Lucas. Indeed, each was alleged to have acted wholly independently of the other.

The allegations against Bray are outlined in paragraph 8 of the Lucas Indictment. (Lucas Decl., Ex G). The government

stated that it included allegations against Bray in the Lucas Indictment only to act as background or context for the crimes alleged against Lucas. In the Lucas Indictment, Bray is alleged to have intentionally caused various individuals to be wrongfully charged by, among other things: (1) intentionally misidentifying the person(s) who provided the drugs; (2) providing these individuals with his own drugs and then retrieving the drugs to make the individuals appear as the drug suppliers; and (3) staging scripted recorded conversations in order to make these individuals appear to be drug suppliers. To the extent that Webb's Complaint makes these allegations against Bray, it is entirely accurate.

On the other hand, the particulars of Bray's deceptions, as set for in paragraphs 8(a) through 8(m) of the Lucas Indictment, show unequivocally that the law enforcement officials who worked with Bray, including Lucas, were <u>not</u> part of his "frame up" scheme. Nowhere in the entire Indictment is there any allegation that Lucas or any other law enforcement official even knew about Bray's frame-up scheme, let alone that they participated in it. Indeed, the Indictment makes no allegation of a conspiracy between Bray and Lucas or any other of the defendants charged in the Complaint.

In its response to Lucas' pre-trial motions, the government made some important admissions about the theory of its criminal case against Lucas and intended proof at the trial. In this regard, the government asserted:

> The government does not allege that the Defendant conspired with Bray to set up innocent persons. The government does not contend that Defendant Lucas was even aware of Bray's scheme. There is no conspiracy alleged between the Defendant Lucas and Bray. (Lucas Decl., Ex. J).

At Lucas' criminal trial, Bray testified as a witness for the government. He admitted that he fabricated evidence against the Mansfield defendants, as outlined in the Indictment, but he also conceded that none of the law enforcement officials, including Lucas, were either involved in, or were aware of, his deceptions. Bray further admitted that initially he had told the authorities that Lucas was involved in his deceptions involving Mansfield defendants Geneva France and Joshawa Webb, but he later recanted these claims when he was confronted by contrary evidence and when he failed repeated polygraph examinations. (Lucas Decl., Ex I).

In paragraph 8(j) of the Lucas Indictment (Lucas Decl., Ex. G), it was alleged that on October 14, 2005, Bray falsely told law enforcement, including Lucas, that he had arranged for a controlled purchase of crack cocaine from plaintiff Webb. Instead, Bray allegedly arranged for a confederate, an individual named Jeremiah Conrad, to travel with Bray to meet with Lucas, in order for Conrad to pose as a source for crack during the controlled purchase. Prior to the controlled purchase, Bray gave Conrad the crack that Conrad was to give to Lucas. Bray and Conrad then met Lucas in a parking lot in Mansfield where Lucas purchased the crack from Conrad, whom Bray falsely identified to

4

Lucas as "Josh" Webb.  Again, Lucas was not alleged to have known that Bray used Conrad as a stand-in for Webb, if indeed it was Conrad in the car at all.  For, at Lucas' criminal trial, Conrad was unable to state that he was ever in a car with Lucas.

**ARGUMENT**

**I.**

**BECAUSE THE GRAND JURY INDICTMENT RELATING TO WEBB WAS BASED UPON INDEPENDENT FINDINGS OF PROBABLE CAUSE, THE COMPLAINT SHOULD BE DISMISSED DUE TO QUALIFIED IMMUNITY**

**1. Qualified Immunity -- Legal Standard**

The doctrine of qualified immunity "shields 'government officials performing discretionary functions … from civil damages liability as long as their actions could reasonably have been thought consistent with the rights they are alleged to have violated.'"  Solomon v. Auburn Hills Police Dept., 389 F.3d 167, 172 (6th Cir. 2004), quoting Anderson v. Creighton, 483 U.S. 635, 638 (1887).  The Supreme Court has established a two-part test, the order of which has recently relaxed, for determining whether a law enforcement officer is entitled to qualified immunity.  See Lyons v. City of Xenia, 417 F.3d 565 (6th Cir. 2005), citing Brosseau v. Haugen, 543 U.S. 194 (2004).  Under this test, district courts must "consider whether 'the facts show the officer's conduct violated a constitutional right.' … If plaintiff can establish that a constitutional violation occurred, a court should ask 'whether the right was clearly established … in light of the specific context of the case, not as a broad

5

general proposition.'" <u>Lyons</u>, 417 F.3d at 571, <u>quoting</u> <u>Saucier v. Katz</u>, 533 U.S. 194, 201 (2001).

The Supreme Court has recently receded from the strict formula described in <u>Saucier v. Katz</u> and determined that its "procedure should not be regarded as an inflexible requirement." <u>See</u> <u>Pearson v. Callahan</u>, 129 S.Ct. 808, 812 (2009).  In <u>Pearson</u>, the Court explained that "[o]n reconsidering the procedure required in <u>Saucier</u>, we conclude that while the sequence set forth there is often appropriate, it should no longer be regarded as mandatory.  The judges of the district courts and the courts of appeal should be permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand."  129 S.Ct. at 818.

A right may be defined as clearly established by looking to Supreme Court precedent, then to Sixth Circuit precedent, then to other courts within the Sixth Circuit, and finally to decisions of other circuits.  <u>See</u> <u>Gardenhire v. Schubert</u>, 205 F.3d 303, 311 6th Cir. 2000).  In addition, "[q]ualified immunity affords government officials an immunity from suit 'insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." <u>Harlow v. Fitzgerald</u>, 457 U.S. 800, 818 (1982).  This analysis should consider the legal rules that are clearly established at the time the defendants took the alleged actions.

See Rodgers v. Jabe, 43 F.3d 1082, 1085 (6th Cir, 1995); Anderson v. Creighton, 483 U.S. at 639.

Once a defendant claims the affirmative defense of qualified immunity, the burden shifts to the plaintiff to demonstrate that the defendant is not entitled to the defense. Myers v. Potter, 422 F.3d 347, 352 (6th Cir. 2005); Gardenhire, 205 F.3d at 311. Law enforcement officials will be entitled to qualified immunity "'when their decision was *reasonable*, even if mistaken.'" Pray v. City of Sandusky, 49 F.3d 1154, 1158 (6th Cir. 1995); Malley v. Briggs, 475 U.S. 335, 349 (1986). Further, "'[if] officers of reasonable competence could disagree on this issue, immunity should be recognized.'" Pray, 49 F.3d at 1158; Malley v. Briggs, 475 U.S. at 349. This "objective legal reasonableness" standard analyzes claims of immunity on a fact-specific, case-by-case basis to determine whether a reasonable official in the defendant's position could have believed that his conduct was lawful, judged from the perspective of the reasonable official on the scene. See Graham v. Connor, 490 U.S. 386, 396 (1989).

Webb's Complaint is based, at least in part, upon the claim that because of Bray's duplicity, the officers involved either did not have the probable cause to arrest him. Whether an arrest is constitutionally valid depends upon "whether, at the moment the arrest was made, the officers had probable cause to make it -- whether at that moment the facts and circumstances within their knowledge and of which they had reasonably trustworthy information were sufficient to warrant a prudent man in believing

7

that the petitioner had committed or was committing an offense." Beck v. Ohio, 379 U.S. 89, 91 (1964); see also Baker v. McCollan, 443 U.S. 137, 142-43 (1979); United States v. Dotson, 49 F.3d 227, 230 (6th Cir. 1995).

Put another way, "[i]n order for a wrongful arrest claim to succeed under § 1983, a plaintiff must prove that the police lacked probable cause. A police officer has probable cause if there is a fair probability that the individual to be arrested has either committed or intends to commit a crime." Fridley v. Horrighs, 291 F.3d 867, 872 (6th Cir 2002); see also Michigan v. DeFillippo, 443 U.S. 31, 36 (1979).

In a situation where, as here, the arrest of the plaintiff was pursuant to a grand jury indictment, "the finding of an indictment, fair upon its face, by a properly constituted grand jury, conclusively determines the existence of probable cause for the purpose of holding the accused to answer." Radvansky v. City of Olmstead Falls, 395 F.3d 291, 307 n.13 (6th Cir. 2005); Higgason v. Stephens, 288 F.3d 868, 877 (6th Cir. 2002); Ex Parte United States, 287 U.S. 241, 250 (1932).

As of November 10, 2005, the date of Webb's arrest, the agents and officers had substantial reason to believe that Webb was involved in the drug deal that occurred on October 14, 2005. The probable cause linking Webb to the deal is set forth in the detailed Declaration of defendant Lucas, along with the exhibits supporting it.

8

The facts supporting the probable cause included, but were not limited to, the following: (1) Bray, who knew Webb, told the agents and officers that Webb was the individual in his vehicle who delivered the drugs to Lucas; (2) Bray addressed the individual as "Josh," and the individual did not object to having been addressed by that name; (3) the phone call placed by Bray the day before to set up the deal was in fact placed to Webb, and the two discussed drugs during that conversation; (4) Webb had a prior federal conviction for the sale of drugs; and (5) the individual in the vehicle looked very much like a photograph of Webb which Lucas reviewed after the deal.

On October 14, 2005, Lucas would have had no reason to believe that it was someone other than Webb in the vehicle with him. First and foremost, Bray told him that it was Webb, from whom he had allegedly bought drugs in the past. At that juncture, unlike today, Bray was believed by all of the law enforcement officials who worked with him to be a reliable and trustworthy informant with a solid track record of successes in the Mansfield cases.

Secondly, at that time, none of the agents and officers would have had any reason to believe that Bray was using stand-ins in drug deals because such a practice made little sense then and makes little sense now. Thirdly, Bray's claims about Webb were heavily corroborated, not only by Webb's prior criminal record for drug sales but also by Lucas' independent photographic identification of

9

Webb. Even if it were arguably Conrad in the car, it is undisputed that Bray selected a stand-in who looked very much like Webb. Moreover, the government's dismissal of the case against Webb makes it clear that it was based upon the misconduct of Bray alone, and not the law enforcement officials who find themselves as defendants in this case. (Lucas Decl., Ex. F).

Even, assuming for purposes of argument only, that Webb were somehow not involved in the October 14, 2005 drug sale, a plethora of Sixth Circuit and other precedent holds that a valid arrest based upon then-existing probable cause is not vitiated if the suspect is later found to be innocent or the government chooses not to prosecute him. Williams ex rel. Allen v. Cambridge Bd. of Educ., 370 F.3d 630, 638 (6th Cir. 2004); Criss v. City of Kent, 867 F.2d 259, 262 (6th Cir, 1988); United States v. Covelli, 738 F.2d 847, 854 (7th Cir.), cert. denied, 469 U.S. 867 (1884); Sandul v. Larin, 52 F.3d 326, 1995 WL 216919, at 4 (6th Cir. 1995).

**II.**

**PLAINTIFF WEBB CANNOT RELY UPON THE ALLEGED
FAILURE TO PROVIDE EXCULPATORY EVIDENCE AS
TO OTHER MANSFIELD DEFENDANTS TO ARTIFICIALLY
BUTTRESS HIS OWN CONSTITUTIONAL CLAIMS**

In his most recent attempt to salvage his constitutional claims against the individual law enforcement officials, plaintiff Webb relies primarily on alleged Brady violations against Mansfield co-defendants Roosevelt Williams, Lowestco Ballard, Joe Ward, Ronald Davis, Geneva France and Dwayne Nabors. He argues that although he cannot prove that Lucas committed

10

constitutional violations as to him, he should be able to borrow, perhaps on a Fed.R.Evid. 404(b) theory, Lucas' alleged Brady violations against the other Mansfield drug traffickers.

Significantly, in light of his testimony at the Lucas criminal trial, plaintiff cannot even claim that he was innocent of the charges to which he was charged in the Mansfield case. For, he was undoubtedly guilty of conspiracy based upon his October 13, 2005 telephone conversation with Bray where he now admits that he discussed an eighth of a kilogram of cocaine. Rather, he argues that despite his own clear-cut guilt, he should somehow benefit due to the Brady violations against other Mansfield defendants. He, moreover, fails to mention that he was never convicted of the crime with which he was charged due to the government's dismissal of the charges against him.

Plaintiff's principal constitutional argument is premised not on conduct directed at him but rather on the dubious claim that because Lucas was allegedly involved with Bray in some generalized scheme to hide or conceal exculpatory evidence relating to other Mansfield defendants, it impacts his own constitutional rights in some undefined way. Contrary to this claim, Bivens or civil rights liability based on Brady violations requires a direct nexus between the evidence allegedly suppressed and the guilt or innocence of the accused.

The suppressed evidence has to be "material exculpatory evidence," in the sense that it must be the kind of evidence that "could form a basis for exonerating the defendant." Moldovan v.

11

City of Warren, 573 F.3d 309, 342-43 (6th Cir. 2009).  Indeed, the Supreme Court in Strickler v. Greene, 527 U.S. 263, 281 (1999), held that "there is never a real 'Brady violation' unless the nondisclosure was so serious that there is a reasonable probability that the suppressed evidence would have produced a different verdict."

Moreover, liability under Bivens is an individual rather than a collective concept.  In this regard, the Supreme Court and Sixth Circuit have consistently held that Bivens liability is limited to those officials who have participated in, or contributed to, violations of the Constitution.  See e.g., Monell v. Dept. of Soc. Sys., 436 U.S. 658, 691-91 (1978); Rizzo v. Goode, 423 U.S. 362, 371, 376-77 (1976); Gibson v. Matthews, 926 F.2d 532, 535 (6th Cir. 1991).  In the context of successfully opposing a motion to dismiss, plaintiff need allege with particularity that defendant was directly and personally responsible for the alleged unlawful act, Williams v. Mehra, 135 F.3d 1105, 1114 (6th Cir. 1998); Leach v. Shelby County Sheriff, 891 F.2d 1241, 1246 (6th Cir. 1989); Hays v. Jefferson County, 668 F.2d 869, 872 (6th Cir. 1982); Jones v. City of Memphis, 586 F.2d 622, 625 (6th Cir 1978), and that a causal connection existed between that conduct and plaintiff's injuries. Deaton v. Montgomery City, 989 F.2d 885, 889 (6th Cir. 1993); White v. Gerbitz, 892 F.2d 457, 463 (6th Cir. 1989).

In Rizzo v. Goode, 423 U.S. at 370-71, the Supreme Court emphasized that §1983 permits the imposition of liability "only

12

for conduct which 'subjects, or causes to be subjected' the complainant to a deprivation of a right secured by the Constitution and laws." In the circumstances of that case, the Court held that no liability under §1983 could be imposed on supervisory personnel because "[a]s the facts developed, there was no affirmative link between the occurrence of the various incidents of police misconduct and the adoption of any plan or policy by petitioners expressly or otherwise showing their authorization or approval of such misconduct." Id. at 371.

It is well settled in the Sixth Circuit and elsewhere that personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under §1983 or in Bivens actions. Turner v. City of Taylor, 412 F.3d 629, 643 (6th Cir. 2005); Johnson v. Glick, 481 F.2d 1028, 1034 (2d Cir.), cert. denied, 414 U.S. 1033 (1973). A pleading fails to state a claim if the allegations are merely conclusory and lack factual specificity. Davis v. Michigan Dept. of Correction, 746 F. Supp. 662, 667 (E.D. Mich. 1990), citing Place v. Shepard, 446 F.2d 1239, 1244 (6th Cir. 1971). Damage claims against government officials alleged to arise from violations of constitutional rights cannot be founded upon conclusory, vague or general allegations, but must, instead, allege facts that show the existence of the asserted constitutional rights violation recited in the Complaint and what each defendant did to violate the asserted right. Terrance v. Northville Regional Psychiatric Hosp., 286 F. 3d 834, 842 (6th Cir 2002).

Plaintiff Webb clearly is the most unworthy of all possible Bivens claimants.  He was in 2005 already a federally convicted drug trafficker.  Although in his Complaint he, in a wholly conclusory fashion, avers that he was framed, in fact at the Lucas criminal trial he never denied that he was a drug dealer, or that he had a drug conversation with Bray the day before the October 14, 2005 deal.  He cannot do so because the tape-recorded conversation between him and Bray makes a mockery of his claim that the conversation only involved the purchase of a car.

The fact that there might arguably be Brady material relating to other defendants that was not disclosed to him does not inure to his benefit.  Because he cannot identify any Brady material that relates directly to his own innocence, that was not disclosed to him, and of which Lucas was aware, his claim falls short.  Even if it arguably were Conrad in the car rather than Webb, plaintiff has no evidence that any of the law enforcement officials, including Lucas, had any knowledge of it.

Finally, and most significantly, plaintiff's claim is premised upon the now discredited theory that Lucas and the other law enforcement defendants herein were involved in a conspiracy with Bray to use stand-ins and to frame innocent individuals, such as Webb.  After a multi-year investigation, the government concluded, and indeed Bray finally conceded, that he acted completely alone in his use of stand-ins, and that he deceived the law enforcement officials with whom he worked, including Lucas, about his use of stand-ins.  Here, plaintiff Webb cannot

have it both ways.  He cannot embrace the government's indictment of Lucas when it suits him, and then conveniently ignore undisputed evidence of a lack of a conspiracy between Lucas and Bray when it does not comport with his theory of liability.

### Conclusion

For the aforementioned reasons, defendant Lucas respectfully requests that this Honorable Court dismiss plaintiff Webb's <u>Bivens</u> claims against him.

                                        Respectfully submitted,

                                        <u>s/ Thomas G. Roth</u>

                                        THOMAS G. ROTH  
                                        LAW OFFICES OF THOMAS G. ROTH  
                                        12 FAIRVIEW AVENUE  
                                        WEST ORANGE, NEW JERSEY 07052  
                                        (973) 736-9090  
                                        (973) 736-8005  
                                        email: <u>tgroth395@aol.com</u>

                                        <u>s/ Joel J. Kirkpatrick</u>

                                        JOEL J. KIRKPATRICK (0071924)  
                                        KIRKPATRICK LAW OFFICES, P.C.  
                                        31800 NORTHWESTERN HIGHWAY  
                                        SUITE 350  
                                        FARMINGTON HILLS, MI 48334  
                                        (248) 855-6010  
                                        (866) 241-4152 fax  
                                        email: <u>joel@kirk-law.com</u>

                                        Attorneys for Defendant  
                                        Lee Lucas

Dated: October 13, 2010

**CERTIFICATE OF SERVICE**

    I certify that on October 13, 2010, a copy of the above supplemental Reply Brief was filed electronically.  Notice of this filing will be sent to all parties by operation of the Court's electronic filing system.  Parties may access this filing through the Court's system.

                        s/ Joel J. Kirkpatrick

                        JOEL J. KIRKPATRICK
                        Attorney for Defendant
                        Lee Lucas