**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **JOSHAWA WEBB, ET AL.,** | ) | **CASE NO.1:07CV3290** |
| | ) | |
| Plaintiff, | ) | **JUDGE CHRISTOPHER A. BOYKO** |
| | ) | |
| Vs. | ) | |
| | ) | |
| **LEE LUCAS, ET AL.,** | ) | **OPINION AND ORDER** |
| | ) | |
| Defendant. | ) | |

**CHRISTOPHER A. BOYKO, J:**

This matter is before the Court on Defendant Lee Lucas' Motion for Summary Judgment (ECF # 68) and Supplemental Motion to Dismiss Complaint (ECF # 139). For the following reasons, the Court, grants, in part, and denies, in part, Lucas' Motions.

The case arises from a First Amended Complaint filed by Joshawa Webb ("Webb"), alleging constitutional violations stemming from his arrest and incarceration for an alleged drug conspiracy. Webb contends he was innocent of the charges and his arrest and incarceration were the result of Defendants' wrongful acts. The Court finds Plaintiffs' First Amended Complaint does not allege any constitutional violation claims on behalf of Webb's fellow Plaintiffs, to wit; his mother Juanita Brooks, his wife Lakisha, his unnamed adolescent sister or his child; further,

Webb has not provided any evidence that he is a guardian authorized to bring suit on behalf of his adolescent sister. Therefore, this discussion on qualified immunity applies solely to Webb's claims.

By way of background, the Court had previously ruled on Lucas' Summary Judgment Motion and granted it, due in part to Plaintiffs failure to oppose the Motion. After reviewing Plaintiff's subsequently filed Motion under Fed. R. Civ. P. 60(b), the Court determined that Plaintiff's error in failing to oppose the motion was due to excusable neglect. The Court agreed to reconsider Lucas' Summary Judgment Motion with the benefit of Plaintiff's opposition. After the Court returned the case to the active docket Lucas filed a Supplemental Motion to Dismiss which Plaintiff opposed. Lucas' Motion to Dismiss will be treated as a Supplemental Motion for Summary Judgment, as it relies, at least in part, on evidence (i.e. Lucas' declaration) outside the pleadings. The Court will now consider both Motions in its Opinion.

**Defendants' Version of the Facts**

The matter before the Court arises from Webb's arrest in connection with a drug investigation. According to Defendants' affidavits in this suit, on November 9, 2005, Plaintiff Joshawa Webb was indicted for violations of federal criminal drug laws. The investigation began in December of 2004 due to a murder that occurred in Richland County. The Richland County Sheriff's investigation of the murder indicated it was drug related and, as a result, the Richland County Sheriff's Department began investigating drug trafficking in Richland County. At the request of the Richland County Sheriff's Department in late August or early September of 2005, the Drug Enforcement Agency ("DEA") Task Force began working collaboratively with the Richland County Sheriff's Department investigating drug trafficking in and around Richland

County.

As part of the investigation, on October 13, 2005, Richland County Sheriff's Department Detective Chuck Metcalf monitored and recorded a phone conversation between Jarrell Bray, a paid DEA informant, who was also a confidential informant used previously by the Richland County Sheriff's Department, and a man Bray identified as Joshawa Webb, wherein Bray relayed he had $2,000.00 to purchase crack the next day.

On October 14, 2005, Detective Metcalf, Richland County Sheriff's Department Sgt. Matt Mayer, DEA Special Agent Lee Lucas ("Lucas"), DEA Task Force Officer Tom Verhiley and DEA Special Agent Robert Cross met at the Richland County Sheriff's Office to arrange a controlled buy of two and a half ounces of crack cocaine from the person identified by Bray as Joshawa Webb. That same day Lucas, operating undercover, contacted Bray, who informed Lucas that Webb was with him. After securing money for the buy from federal government funds wherein the serial numbers were previously recorded, Lucas, wearing a wire, along with Detective Metcalf, Agent Cross, Sgt. Mayer and Agent Verhiley, proceeded to the location of the controlled buy. Lucas drove in a separate vehicle and pulled into a gas station next to a vehicle with tinted windows. The other agents and Richland officers were unable to observe the vehicles from their monitoring location. Lucas later informed Agent Cross that he entered the vehicle with Bray where a large white male was seated in the front passenger seat. Bray identified the individual as Webb. Lucas exchanged $2600.00 dollars for approximately 70 grams of crack cocaine. After the transaction, Bray returned to the Richland County Sheriff's office for a debriefing.

In March of 2006, Webb was indicted under a superceding indictment for the alleged sale

of crack cocaine as described above. Sometime in 2007 Bray was arrested and later recanted his previous statements regarding the controlled buy allegedly involving Webb. As a result, the government moved to dismiss the charges against Webb; and on July 16, 2007, the Court granted the government's motion and dismissed the superceding indictment against Webb. On October 24, 2007, Webb filed his Complaint with this Court.

**<u>Plaintiffs' Complaint</u>**

Webb contends he was wrongfully arrested, indicted and incarcerated for nearly twenty-one months on fabricated evidence. Bray confessed to fabricating evidence to frame innocent people, including Webb. Webb alleges audiotape evidence was tampered with or fabricated by Defendants.

Plaintiffs' First Amended Complaint contends the following: Webb never met Lucas prior to being indicted and was not involved in the alleged drug ring. On November 9, 2005, Defendants Lucas, George and other unidentified individuals kicked in the door of the home of Juanita Brooks, Webb's mother, looking for Webb. They attempted to force Webb's adolescent sister to accompany them. Lucas, George and other unidentified personnel then forced their way into Webb's home where they arrested Webb in the presence of Webb's wife, Lakeisha, and infant child. Plaintiffs contend that Defendants then unlawfully searched Webb's home, where no evidence of criminal activity was found.

The First Amended Complaint further states that two experts have reviewed the audio recordings used to indict Webb and found they were tampered with or fabricated. According to the First Amended Complaint, Bray admitted the controlled buy was simulated and recorded to make it sound like Webb was involved in the drug ring. The First Amended Complaint further

alleges Defendants fabricated, destroyed and/or withheld evidence that would have exonerated Webb and alleges Defendants coached and manipulated witnesses and withheld doing so from prosecutors. The First Amended Complaint alleges Defendants violated Webb's rights under the Fourth, Fifth, Sixth, Eighth and Fourteenth Amendments; Defendants conspired to deprive Webb of his constitutional rights; the municipal defendants failed to train their employees; and, in addition, their policies and practices violated Webb's constitutional rights, and finally, alleges violations of Ohio state law for malicious prosecution and intentional infliction of emotional distress.

## STANDARD OF REVIEW

In accordance with Federal Rule of Civil Procedure 56(c), summary judgment is appropriate when no genuine issues of material fact exist and the moving party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *LaPointe v. United Autoworkers Local 600*, 8 F.3d 376, 378 (6th Cir. 1993). The burden of showing the absence of any such genuine issues of material facts rests with the moving party:

> [A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrates the absence of a genuine issue of material fact.

*Celotex*, 477 U.S. at 323. A fact is material only if its resolution might affect the outcome of the lawsuit under the governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

Once the moving party has satisfied its burden of proof, the burden then shifts to the nonmoving party pursuant to Federal Rule of Civil Procedure 56. In ruling upon the motion, the court must afford all reasonable inferences and construe the evidence in the light most favorable

to the nonmoving party. *Cox v. Kentucky Dept. of Transp.*, 53 F.3d 146, 150 (6th Cir. 1995); *United States v. Hodges X-Ray, Inc.*, 759 F.2d 557, 562 (6th Cir. 1985). However, summary judgment should be granted if the party bearing the burden of proof at trial does not establish an essential element of its case. *Tolton v. American Biodyne, Inc.*, 48 F.3d 937, 941 (6th Cir. 1995) (citing *Celotex*, 477 U.S. 317). Furthermore, this Court is not required "to search the entire record to establish that it is bereft of a genuine issue of material fact." *Betkerur v. Aultman Hospital Ass'n,* 78 F.3d 1079, 1087 (6th Cir. 1996). "Rather, the burden falls on the non-moving party to designate specific facts or evidence in dispute." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249-250 (1986).

**42 U.S.C. §1983, *Bivens* and Qualified Immunity**

In order to prevail on a claim under 42 U.S.C. § 1983, a plaintiff must prove two elements**.**  First, he must demonstrate that he was deprived of a right secured by the Constitution or the laws of the United States, and second, he must demonstrate that the deprivation was caused by a person acting under color of state law. *Redding v. St. Edward*, 241 F.3d 530, 532 (6th Cir. 2001).

When the cause of action concerns violations of constitutional rights by federal agents sued in their individual capacities the United States Supreme Court in *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics,* 403 U.S. 388, 390-97 (1971), implied a right to damages for Fourth Amendment violations. Since then, the Supreme Court has extended *Bivens* twice, " to provide an otherwise nonexistent cause of action against *individual officers* alleged to have acted unconstitutionally, or to provide a cause of action for a plaintiff who lacked *any alternative remedy* for harms caused by an individual officer's unconstitutional conduct."

6

*Correctional Services Corp. v. Malesko,* 534 U.S. 61, 70 (2001). *Bivens* acts as a counterpart to 42 U.S.C. §1983 actions where the former is the proper vehicle for bringing constitutional violation suits against federal actors while the latter is used for suits against state actors. *Id* at 66-67. A *Bivens* action permits the defense of qualified immunity, the analysis of which is identical under either *Bivens* or §1983. *Wilson v. Layne,* 526 U.S. 603, 609 (1999). "Government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald,* 457 U.S. 800, 818 (1982) "Qualified immunity 'is an affirmative defense that must be pleaded by a defendant official.'" *Harlow*, 457 U.S. 800, 815 (1982). But qualified immunity "is an immunity from suit rather than a mere defense to liability." *Hunter v. Bryant*, 502 U.S. 224, 227 (1991) (quoting *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985)). "Immunity ordinarily should be decided by the court long before trial." *Hunter* at 228 (citing *Mitchell* at 527-29). "Unless the plaintiff's allegations state a claim of violation of clearly established law, a defendant pleading qualified immunity is entitled to dismissal before the commencement of discovery." *Mitchell* at 526 (citing *Harlow* at 818). The issue of qualified immunity must be addressed at the earliest possible point in the litigation. *Saucier v. Katz,* 533 U.S. 194, 200-201 (2001), *overruled on other grounds by Pearson v. Callahan*, ___ U.S. ___, 129 S.Ct. 808, 818 (2009). *Siegert v. Gilley,* 500 U.S. 226, 232 (1991). The Supreme Court has stated that, "[u]ntil this threshold immunity question is resolved, discovery should not be allowed. " *Harlow*, 457 U.S. at 819. A district court should resolve the immunity question before permitting discovery. *Crawford-El v. Britton,* 523 U.S. 574, 598 (1998). Indeed, one of the core purposes

7

of the immunity is to shield officials from "the burdens of broad-reaching discovery." *Crawford-El,* 523 U.S. at 588 (quoting *Harlow*, 457 U.S. at 817-818).

The analysis of a qualified immunity claim is distinct from the merits of the underlying claim itself. *Saucier,* 533 U.S. at 204; *Dunigan v. Noble,* 390 F.3d 486, 491 n.5 (6th Cir. 2004). Qualified immunity is a purely legal question which must be determined early in the proceedings. *Saucier,* 533 U.S. at 200; *Siegert,* 500 U.S. at 232.

The defendants bear the initial burden of coming forward with facts which suggest that they were acting within the scope of their discretionary authority at the time in question. *Rich v. City of Mayfield Heights,* 955 F.2d 1092, 1095 (6th Cir. 1992). The burden then shifts to the plaintiff to show that the defendants are not entitled to qualified immunity. *Untalan v. City of Lorain,* 430 F.3d 312, 314 (6th Cir. 2005); *Cartwright v. City of Marine City,* 336 F.3d 487, 490-491 (6th Cir. 2003).

## ANALYSIS

**Lucas' Motion for Summary Judgment**

Defendant Lucas has been an agent with the DEA for over sixteen years, has participated in over a thousand drug cases and investigations, and has worked in an under cover capacity on over one hundred drug cases, including this case. Lucas moves for summary judgment based on qualified immunity on Plaintiffs' *Bivens* claims because Webb allegedly cannot demonstrate Lucas' actions regarding Webb's criminal investigation and arrest violated Webb's constitutional rights. Furthermore, Lucas contends Plaintiffs' claims lack evidentiary support and are merely conclusory allegations lacking reasonable particularity.

Attached to his summary judgment motion, Lucas provides a number of exhibits in

8

support of his contention that Bray was approved as an informant by the proper DEA authorities, had been used by Richland Sheriff's department before, and has been indicted for falsely implicating Webb amongst others in the drug conspiracy.  In short, Lucas contends the evidence demonstrates the controlled buy was made from Webb and there is no evidence Lucas fabricated evidence.

The only non-conclusory facts alleged in Plaintiffs' First Amended Complaint are stated as follows:

> In or about October of 2005, Joshawa Webb was falsely implicated in a drug conspiracy.  According to the fabricated charges in Mr. Webb's criminal case, he allegedly sold Defendant Lee Lucas crack cocaine.
>
> In reality, Mr. Webb never met Defendant Lee Lucas prior to being charged with this crime. Mr. Webb was not involved in the alleged drug ring for which he was arrested.
>
> On November 9, 2005 Lee Lucas, Dan George, and yet-unidentified Defendants kicked in the door of Juanita Brooks' home.  In an effort to locate Mr. Webb, Lucas and Dan George attempted to force Mr. Webb's adolescent sister to accompany them.
>
> Later on or about November 9, 2005, Lee Lucas, Dan George, and yet-unidentified Defendants forced their way into Mr. Webb's residence with their guns drawn and falsely arrested Mr. Webb.  Lakeisha Webb and Kalib Webb, who was 15 months old at the time, were present for those events.
>
> After arresting Mr. Webb, the Defendants searched the Webb home without lawful justification.  The search did not uncover evidence of any crime.

The Sixth Circuit has held "that a person's constitutional rights are violated when

9

evidence is knowingly fabricated and a reasonable likelihood exists that the false evidence would have affected the decision of the jury." *Gregory v. City of Louisville,* 444 F.3d 725, 737 (6th Cir. 2006) citing *Stemler v. City of Florence,* 126 F.3d 856, 872 (6th Cir.1997). However, " the burden is on the plaintiff to allege and prove that the defendant violated a clearly established constitutional right." *Spurlock v. Satterfield,* 167 F.3d 995, 1005 (6th Cir 1999).

As the Supreme Court in *Saucier* held, in order to overcome a qualified immunity motion, a plaintiff must show (1) the facts, taken in the light most favorable to plaintiff, "show the officer's conduct violated a constitutional right," and (2) the right was "clearly established." *Saucier* 533 U.S. at 201.

In the Court's original ruling in favor of Lucas, the Court found that Lucas had offered unrebutted evidence regarding his role in the controlled buy and his handling of evidence used to charge Webb, demonstrating his conduct did not violate Webb's constitutional rights. However, in two cases alleging nearly the same claims, filed by the same counsel for Plaintiffs against many of the same Defendants, Judge Gaughan in *Westerfield* and Judge Oliver in *Brown v. USA, et al.*, 1:07cv3750 (N.D. Ohio 2008) arrived at opposite conclusions on qualified immunity. Both cases were appealed, resulting in the Sixth Circuits overturning Judge Gaughan's grant of summary judgment and upholding Judge Oliver's grant of limited discovery on the issue of qualified immunity. See *Brown v. USA et al* 366 Fed. Appx. 614 (6th Cir. 2010). In *Westerfield,* the Court stated:

> denying any discovery in this case, when it appears from the amended affidavit that the allegations in the complaint-at least with respect to some defendants-are anything but frivolous, would work a manifest injustice on plaintiff.

366 Fed. Appx. 614, 620 2010 WL 653535 *5 (6th Cir. 2010).

In this case, Plaintiff's Rule 56(d) affidavit is nearly identical to the affidavit in *Brown*,

10

as to how discovery will enable him to defeat Defendants' summary judgment motions. Plaintiffs' affidavit by counsel states the belief that a conspiracy existed among various law enforcement officials acting in Richland, Ohio, as evidenced by defendants similar to Webb, who were falsely charged by the defendants.

Now, having considered the Plaintiff's Opposition Brief which argues for additional discovery and, in light of the Sixth Circuit's opinion in *Westerfield*, the Court finds limited discovery should be permitted.  Therefore, the Court holds Plaintiff is entitled to discovery on his claims that Lucas violated his constitutional rights when Lucas falsely arrested him, unlawfully searched his home and tampered with, withheld or destroyed evidence in order to unlawfully charge Webb with a criminal act.  Given that Lucas allegedly met Webb at the time of the controlled buy, then later arrested him and given Lucas' role in the collection, production and possession of evidence, the Court finds limited discovery is necessary to allow Plaintiff to fully address the issue of qualified immunity.

However, the inquiry does not stop there since the Court also held that some of Plaintiff's claims failed to sufficiently allege facts to support his claims and thus failed as a matter of law. The Court will now revisit that analysis in light of Plaintiff's Objections and the Supplemental Motions and opposition briefs.

"A necessary concomitant to the determination of whether the constitutional right asserted by a plaintiff is 'clearly established at the time the defendant acted is the determination of whether the plaintiff has asserted a violation of a constitutional right at all." *Rich* at 1095 (quoting  *Siegert*, 500 U.S. at  226). "In ruling on a summary judgment motion, a district court will consider the allegations put forth by the plaintiff, and '[u]nless the plaintiff's allegations

11

state a claim of violation of clearly established law, a defendant pleading qualified immunity is entitled to dismissal before the commencement of discovery.'" *Rich* at 1095, (quoting *Mitchell,* 472 U.S. at 526). As the Sixth Circuit has consistently held, "It is not enough for a complaint under § 1983 to contain mere conclusory allegations of unconstitutional conduct by persons acting under color of state law. Some factual basis for such claims must be set forth in the pleadings." *Chapman v. City of Detroit,* 808 F.2d 459, 465 (6th Cir. 1986) citing *Place v. Shepherd,* 446 F.2d 1239 (6th Cir. 1971). The Sixth Circuit in *Chapman* went on to say:

> There is a sound reason for requiring that a civil rights action against a government official or employee state a claim in terms of facts rather than conclusions. When a government employee is sued, if no factual allegations are made, discovery and perhaps even trial may be required to demonstrate that the claim has no merit. Such activities require the government defendant and others such as government attorneys involved in defense of the claim to divert their attention from their usual activities and to become involved in the litigation to the neglect of their assigned duties.

*Id.*

The Court previously determined that the First Amended Complaint failed to allege sufficient facts to support the claims against Lucas. After granting Plaintiff's Rule 60(b) and considering the parties additional briefs, the Court revises its Opinion. Here, the First Amended Complaint states generalized allegations of evidence tampering by all Defendants and states that Lucas falsely arrested Webb. It also states Defendants, including Lucas, unlawfully searched Webb's home.

Given the overarching requirement at this stage of the proceedings that the facts alleged in the Complaint be construed in favor of Plaintiff, the Court finds Plaintiff's claims, that he never met Lucas prior to being charged with a crime, coupled with Lucas' admissions in his declaration that he was present in the vehicle at the time of the alleged controlled buy from

12

Webb, and later identified Webb as the person in the car during the controlled buy supports a claim for violating Webb's constitutional rights at the pleading stage.  Although the allegations of tampering with evidence are plead against all Defendants, Lucas' admitted role in possessing at some point the recorded phone conversations setting up the drug buy, participating in the buy and identifying Webb, require those claims proceed and permit Plaintiff limited discovery to address Lucas' qualified immunity motion.  Furthermore, the Sixth Circuit in *Westerfield* indicated that the allegations in that case, which are similar to the ones before this Court were "anything but frivolous" compels additional discovery.

Finally, Plaintiffs' conspiracy claim wholly fails to state a claim as a matter of law.  As the Sixth Circuit has stated, "[i]t is well-settled that conspiracy claims must be pled with some degree of specificity and that vague and conclusory allegations unsupported by material facts will not be sufficient to state a claim under § 1983." *Gutierrez v. Lynch*, 826 F.2d 1534, 1538 (6th Cir.1987).

In a recent decision, the Sixth Circuit upheld the dismissal of a conspiracy claim for lack of specificity.  In *Heyne v. Metropolitan Nashville Public Schools,* 655 F.3d 556, 563 -564 (6th Cir. 2011), the Sixth Circuit was faced with a conspiracy claim brought under 42 U.S.C. §1983 against state employees. The Court's analysis of the claims reads as follows:

> Here, the Amended Complaint does not contain a separate count for conspiracy to violate Heyne's constitutional rights. The only paragraph in which Heyne discusses conspiracy is vague and consists primarily of legal conclusions: "Defendants have conspired among themselves and with others unnamed in the [MNPS] system to knowingly and intentionally deny [Heyne]'s constitutional rights. They have also conspired with D.A.'s parents to support D.A.'s claim against the Heynes' insurance carrier for compensation." We  need not accept these legal conclusions as true, and we decline to do so. *See Jones v. City of Cincinnati,* 521 F.3d 555, 559 (6th Cir.2008). Legal conclusions that are "masquerading as factual allegations" will not suffice. *Terry v. Tyson Farms, Inc.,*

13

> 604 F.3d 272, 276 (6th Cir.2010) (quoting *Tam Travel, Inc. v. Delta Airlines, Inc.,* 583 F.3d 896, 903 (6th Cir.2009)). The Amended Complaint contains other allegations about the Individual Defendants' conferring with one another at different points in Heyne's disciplinary process, but it does not contain any more specific allegations of a plan or agreement to violate his constitutional rights.
>
> Heyne's factual allegations of a conspiracy are no more specific than other allegations we have deemed insufficient. *See Moldowan v. City of Warren,* 578 F.3d 351, 394–95 (6th Cir.2009); *Gutierrez,* 826 F.2d at 1538–39; *cf. Spadafore,* 330 F.3d at 854 (affirming summary judgment on plaintiffs' § 1983 conspiracy claim where they did not submit any evidence suggesting that defendants had a single plan when they allegedly made false statements). Heyne's failure to plead a plan or agreement to violate his constitutional rights is fatal to his conspiracy claim. *See Mettetal v. Vanderbilt Univ., Legal Dep't,* 147 Fed.Appx. 577, 585 (6th Cir.2005) (concluding that a district court correctly dismissed certain conspiracy claims for failure to allege that the parties had entered into an agreement or formed a single plan). Heyne has not plausibly stated a conspiracy claim.

Here, the Court finds much the same flaws in Plaintiff's First Amended Complaint. There is no separate count for conspiracy.  There is no separate allegation of acts particular to each defendant showing a single plan or agreement to deprive Plaintiff of his constitutional rights.  Webb's First Amended Complaint alleges conspiracy in only vague and general terms. For example, the First Amended Complaint at paragraph 36 states, " Defendants also reached an agreement to deprive Mr Webb of his constitutional rights via illicit means, and one or more of them took actions in furtherance of this conspiracy."  These conclusory allegations fail to meet specificity requirements for pleading conspiracy as stated by the Sixth Circuit.  Therefore, the Court dismisses Plaintiff's conspiracy claims without prejudice.  Plaintiff may seek to amend the Complaint once limited discovery is completed, however, Plaintiff is admonished to separate out his claims for both the Defendants' and the Court's benefit so that the parties and the Court are not left to speculate as to what claims are being asserted against which Defendants.

The Court, having granted the United States' motion to substitute itself for the federal

defendants on Plaintiffs' common law tort claims, grants Lucas' Motion for Summary Judgment asking the Court to dismiss those claims against him based on the substitution of the United States.

The Court therefore, denies at this time Lucas' motion for summary judgment based on qualified immunity on Plaintiff's claims that Lucas violated Plaintiff's constitutional rights, subject to refiling after Plaintiff has had an opportunity to engage in limited discovery.  The Court grants Lucas' Motion on Plaintiff's conspiracy claim and state tort law claims.

IT IS SO ORDERED.


    S/Christopher A. Boyko
    CHRISTOPHER A. BOYKO
    United States District Judge

December 9, 2011