1  Q.   And where did you get the information that Mr. Nabors
2  was the top person in the organization?
3  A.   From Richland County Sheriff's Office.
4  Q.   And is there a specific individual?
5  A.   Most likely, I don't recall for sure, but it was most
6  likely Chuck Metcalf.
7           MR. ROTH:  No further questions, Your Honor.
8           THE COURT:  All right.  We'll take our
9  afternoon break now.
10          MR. COMBER:  Thank you.
11          (Recess taken).
12          THE COURT:  You may be seated.
13          Sir, you're still under oath.
14          You may proceed.
15          MR. COMBER:  Thank you, Your Honor.
16       CROSS-EXAMINATION OF ROBERT CROSS
17  BY MR. COMBER:
18  Q.   Sir, you had no prior law enforcement experience
19  before starting with DEA, correct?
20  A.   Correct.
21  Q.   And you arrived here in Cleveland to the DEA office in
22  July, 2005?
23  A.   Yes.
24  Q.   One month before Mr. Bray was signed up?
25  A.   Approximately, yeah.  I don't recall the exact dates,

1  a preamble on the recording before a call was made, correct?
2  A.    Yes.
3  Q.    Again, what is a preamble?
4  A.    Basically you just speak into the recording that, like
5  for this case it would be, you know, we're going to have a
6  confidential informant place a call to whoever the target
7  was at this phone number, the date, the time, and who was
8  present.
9  Q.    What's the purpose of a preamble, sir?
10 A.    So that you know what's on that recording.
11 Q.    And one of the things that's on the recording is the
12 actual phone number being dialed?
13 A.    Given on the recording?
14 Q.    Yes.  That's a part of the preamble?
15 A.    Generally, yes.
16 Q.    Okay.  And that can also be corroborated by
17 subpoenaing phone records to make sure that that was the
18 call -- excuse me -- that was the phone that was, in fact,
19 called, correct?
20 A.    Correct.  Correct.
21 Q.    Did you review toll records in this case?
22 A.    Yes.
23 Q.    Did you ever compare the numbers listed in the 6
24 versus the toll records?
25 A.    For several, I'm sure.  I mean, I don't recall

1  specifically, but --

2  Q.    Are you aware that there was almost complete
3  consistency in number called versus number described before
4  DEA became involved, but after DEA became involved there
5  were multiple occasions where the number listed in the
6  report was different than the number that the toll records
7  reflected?

8              MR. ROTH:  Judge, I would object.
9              Mischaracterizes the evidence.
10             MR. COMBER:  Your Honor, I'd suggest Agent
11 Thomas presented chart after chart after chart showing the
12 discrepancies.
13             THE COURT:  Okay.  You may answer.
14             Are you aware that that happened?  You can
15 answer that.
16             And then on redirect, if there are additional
17 questions, they can be dealt with.

18 A.    I'm not aware of that, no.
19 BY MR. COMBER:
20 Q.    Okay.  Did you ever compare the number that's listed
21 in the preamble of the recorded calls in these cases to the
22 number actually listed in the 6?
23 A.    I don't recall.
24 Q.    Did you ever compare the number listed in the preamble
25 of the recorded calls in these cases to the number listed in