# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | | |
|---|---|---|
| JOSHAWA WEBB, | ) | CASE NO.1:07CV3290 |
| HERMAN PRICE, | ) | 1:09CV118 |
| | ) | |
| Plaintiffs, | ) | JUDGE CHRISTOPHER A. BOYKO |
| | ) | |
| Vs. | ) | |
| | ) | |
| LEE LUCAS, ET AL., | ) | **OPINION AND ORDER** |
| | ) | |
| Defendant. | ) | |

## CHRISTOPHER A. BOYKO, J:

This matter is before the Court on Plaintiffs' Motions for Evidentiary Sanctions at Trial (ECF # 203 in case 09-118 and ECF #249 in 07-3290). According to Plaintiffs, Defendant United States and the federal Defendants assured both the Court and Plaintiffs that they had turned over to Plaintiffs, in the course of discovery, all relevant documents. Defendants then moved for summary judgment which was subsequently granted. However, Plaintiffs claim this was not the case as Defendants had in their possession thousands of pages of documents, confirming the conclusions of federal investigators that Defendants engaged in misconduct throughout the Operation Turnaround drug operations, including the Webb and Price criminal prosecutions. These documents included key statements by Jerrell Bray

describing constitutional violations by Lee Lucas.

Although this Court did not have the benefit of this information when it made its rulings, the Sixth Circuit did have it because Defendants turned it over post this Court's summary judgment rulings. With the benefit of the newly produced evidence, the Sixth Circuit reversed this Court. Because Defendants failed to produce these key documents, with no explanation why they did not produce it, sanctions are warranted.

According to Price, he spent two years in prison for a crime he did not commit. Instead, he was framed by federal and state agents. After the suit was filed, Defendants sought to bar discovery in the case, contending that the United States had already produced all relevant documents in its possession, including the entire DEA investigative files and those of the Richland County Sheriff's Office.

This one set of documents were tendered by Defendants to Plaintiff's counsel for use in all those claims arising out of Operation Turnaround. These same representations were made in the companion case of *Webb v. Lucas*. These misrepresentations were made in the other cases arising out of Operation Turnaround involving other plaintiffs before other judges in this district. Based on these representations, this Court limited discovery and proceeded to summary judgment on qualified immunity.

However, on March 13, 2013, Plaintiff learned that these representations by Defendants were untrue. In *Westerfield v. Lucas*, Defendants produced thousands of pages of discovery not previously disclosed that were directly related to Plaintiff's claims. These documents were part of the United States' own investigation of the alleged abuses surrounding Operation Turnaround. The investigation of these alleged abuses was conducted

by the United States Department of Justice through the Office of the Inspector General ("OIG"). As a result of the investigation, the United States criminally prosecuted Agent Lucas. The OIG investigation included interviews of more than fifty witnesses and the review of thousands of documents. The OIG prepared a summary report of its investigation on January 21, 2011. Its conclusions support the allegations in Plaintiff's Complaint. The OIG concluded that more than half of those charged in Operation Turnaround were not present at the drug transactions. In many cases "stand-ins" were used for the controlled buys. The OIG Report also describes significant evidence that Lucas falsified his reports, provided false testimony at trials and failed to report exculpatory evidence within his knowledge, particularly concerning the credibility of Bray and himself in order to convict innocent citizens, including Price.

The OIG Report attached CD-Roms consisting of thousands of pages of documents. These included witness statements from Bray wherein he admitted to conspiring with Lucas throughout Operation Turnaround in order to frame Price and Webb, among others. Bray admitted Lucas was directly involved in the decision to frame Price and Webb. Although he later backed off such statements at Lucas' criminal trial, Bray originally stated that he made clear to Lucas that Price was not dealing with Bray but rather Bray had a friend of his, Moxley, bring the drugs. In *Webb*, Bray told Lucas he was not going to buy drugs off Webb. In spite of this knowledge, Lucas approved the deal.

Bray also stated Lucas pretended to hear Bray call Price when in fact the call was faked. The OIG concluded Lucas lied under oath at his own trial about this matter. Bray further represented that Mayer shot a video of the lead up to the Webb drug buy that included

3

a clear shot of the front windshield. Metcalf expressed doubts that Webb was the person in the car but after Lucas confronted Metcalf, the issue was dropped and no videotape was found.

According to Plaintiff, there is no justification for the United States or the federal Defendants failure to produce the OIG Report and supporting materials. It was within the United States' exclusive control, was relevant and discoverable. There is also real prejudice to Plaintiffs because had they had the OIG Report they could have questioned Bray prior to his passing in 2012. Prior to the OIG Report, Plaintiffs only had Bray's trial testimony exculpating Lucas. Had they had the opportunity to question Bray, Plaintiffs could have inquired why Bray flipped his testimony or been able to confront or impeach him on the record.

Plaintiff asks for the following sanctions:

1) The Government should be required to answer whether the AUSAs litigating Price and Webb have knowledge of the Bray statements and OIG Report during discovery and prior to moving for summary judgment. If not, when exactly did defense counsel AUSAs learn of them and why were they withheld until after summary judgment was briefed.

2) Defendants should be barred from introducing any Bray testimony from Lucas' criminal trial indicating Bray acted alone and that Lucas was not complicit in framing Operation Turnaround suspects. This is only fair since the Defendants' failure to timely provide the OIG Report and supporting materials prevented Plaintiffs from impeaching Bray on the very testimony they would seek to offer into evidence.

3) An adverse jury instruction that reads as follows:

   1. The United States was obligated to turn over to Plaintiffs all of the relevant documents and evidence it had in its possession relating to this action.

   2. The Defendants represented to the Court that it turned over all relevant documents and evidence to Plaintiffs that it possessed.

3. The Court accepted the Defendants' representations that the United States had turned over all of the relevant documents and evidence to Plaintiffs.

4. The Defendants' representation that it had turned over all of the relevant documents and evidence to Plaintiffs was false. The Defendants had not turned over all of the relevant documents and evidence to Plaintiffs. The documents that the Government improperly withheld included the investigation report of United States Department of Justice, Office of the Inspector General, pertaining to Operation Turnaround, and interview statements taken as part of that investigation from, among other people: Jerrell Bray; Defendants Lucas, Metcalf and Cross; local law enforcement officers Jamaal Ansari, Dawn Brown, Larry Faith, Matt Mayer, and Perry Wheeler; DEA Agents Greg Brodersen, Thomas Verhiley, and Defendant Lucas' supervisor, John Ferster; and Assistant United States Attorneys Ron Bakeman, Blas Serrano, and Greg White.

5. You the jury are permitted, but not required, to draw the inference that the reason the United States falsely represented to the Court and to the Plaintiffs that it had turned over all the documents when in fact it had not was because the Defendants believed the documents would be harmful to their position.

**Defendants' Response**

Defendants oppose Plaintiffss Motions, contending that they did not improperly withhold the OIG Report and supporting documents. Defendants refer to the long and complicated discovery process in this case and the surrounding investigations arising from the drug investigations by the Richland County Sheriff's Office and federal agencies in 2005. As a result, many arrests and prosecutions occurred in 2005 and 2006. After his arrest in 2007 for shooting another individual, Bray informed his public defender that he was a participant in a conspiracy with state and federal officials to frame innocent people for drug dealing. He further alleged Lucas falsified evidence and falsely accused innocent people. This led to an investigation by the Department of Justice through the OIG and ultimately led to criminal charges against Lucas on eighteen counts of providing false information in his DEA reports or in his testimony against nine different defendants. Lucas was acquitted of all charges.

5

At Lucas's administrative proceedings resulting from the OIG investigation, the Department of Justice's final findings and conclusions were entered into a stipulated Settlement Agreement. As part of the Agreement, Lucas was given a 45 day suspension for failure to include all required information in his DEA-6 Reports in matters related to Noel Mott and Roosevelt Williams.

Given the broad ranging scope of the allegations in this and other similar cases arising from Operation Turnaround, the parties coordinated discovery. It was initially stayed pending Lucas' criminal trial. After his acquittal, the United States obtained the trial transcript from the Lucas criminal proceeding along with over 22,000 pages of all the exhibits.

Although discovery was stayed until resolution of the qualified immunity briefings and discovery is restricted by law when issues of qualified immunity are raised, the United States provided all the above information to Plaintiffs' counsel without cost. There was no mistaking what documents would be produced as the Court's Orders in Lucas' criminal case and in the civil case of Danny Brown, another Operation Turnaround Defendant, reflect the parties agreement as to what was going to be produced. After qualified immunity issues were resolved by the Sixth Circuit in other cases arising from Operation Turnaround, full discovery commenced and the parties reached a global resolution of all outstanding discovery requests in those cases. The United States then produced the OIG Report and exhibits, Lucas's personnel file from 2010-2012, the final stipulated agreement in Lucas's administrative action, the DEA final report on Cross with exhibits, and Cross's personnel file.

The United States's voluntary production of Lucas's transcript and exhibits along with its supplemental production of documents pursuant to the stipulated agreement were intended

6

to prevent piecemeal discovery while providing Plaintiffs the discovery needed to address issues of qualified immunity. The United States contends it made no misrepresentations as evidenced by its submission of 2011 in response to the Court's Order that Plaintiffs submit a list of the discovery sought concerning the individual claims of qualified immunity. Nothing by the Defendants indicated they had provided all materials. They complied with exactly what they said they produced, which included all the investigative materials from the Mansfield drug transactions, all proffers to Defendants, statements by Bray relating to the drug transactions, all audio and visual recordings of the drug transactions and expert reports concerning the alteration of recordings. It further included the entire internal files of the U.S. Attorney's Office in Cleveland, the DEA internal files, Richland County Sheriff and other law enforcement agencies involved in Operation Turnaround. Not only did they provide all this but also the transcript and all exhibits in the Lucas criminal trial and transcripts and exhibits in six criminal trials arising from Operation Turnaround.

As evidenced by Plaintiff Webb's own admission in 2011, Plaintiffs acknowledged that Defendants only produced limited discovery, therefore, Plaintiffs cannot now assert they believed they had received all relevant discovery. Furthermore, the existence of the OIG investigation was public knowledge in 2009 when in a press release issued by the U.S. Attorney for the Western District of Pennsylvania announcing the indictment against Lucas, the statement included that it was the result of an OIG investigation. In fact, the individual in charge of the OIG investigation testified at Lucas's criminal trial and was questioned extensively about the OIG investigation and her numerous interviews with Bray. Having in their possession the trial transcripts containing this testimony, Plaintiffs never requested the

OIG Report when the Court ordered Plaintiffs to list the discovery they sought from Defendants. Bray was still alive at that time, yet Plaintiffs never requested the OIG investigation.

Defendants oppose the proposed sanctions submitted by Plaintiffs. According to the United States no adverse jury instruction may be entered against it because Plaintiffs' FTCA claims must be tried to the bench. As no misrepresentations were made Plaintiffs suffered no prejudice as the documents produced by Defendants were exactly what they stated they would provide, therefore, no sanctions are warranted. The OIG Report was not provided to Plaintiffs earlier because it was not an exhibit at Lucas' criminal trial because it was not completed until January 2011. It was produced in 2013 only after a valid discovery request was made for it. Finally, there was nothing disclosed in the OIG Report that was not previously disclosed in particular as it relates to the conflicting statements of Bray. Therefore, for all these reasons, the United States asks that the Court deny Plaintiff's Motion.

Plaintiffs move for sanctions to include barring Defendants from using certain evidence as described above at trial and Plaintiffs are entitled to an instruction outlining Defendants' allegedly improper conduct. "A court has inherent authority to sanction bad-faith conduct in litigation." *Chambers v. NASCO, Inc.,* 501 U.S. 32, 49, (1991); *Roadway Express, Inc. v. Piper,* 447 U.S. 752, 766-67, (1980).

Having reviewed the Motion, Opposition Briefs and Replies along with the rulings in the case, the Court's docket and discovery orders, the Court declines to exercise its inherent authority to sanction Defendants for not producing the OIG Report during the limited qualified immunity discovery period.

This case has presented many unique and difficult challenges primarily due to the number of intertwined cases arising from Operation Turnaround. The parties proceeded with discovery often in a global fashion. Typically, qualified immunity issues are resolved without any discovery because the very intent is to free municipalities and government entities from the cost and expense of discovery on largely issues of law. The Supreme Court in *Crawford El v. Britton,* 523 U.S. 574, 598–99, 118 S. Ct. 1584, 1597, 140 L. Ed. 2d 759 (1998), described the process for addressing qualified immunity and the district court's authority on discovery to address the issue as follows:

> If the defendant does plead the immunity defense, the district court should resolve that threshold question before permitting discovery. *Harlow,* 457 U.S., at 818, 102 S.Ct., at 2738. To do so, the court must determine whether, assuming the truth of the plaintiff's allegations, the official's conduct violated clearly established law. Because the former option of demanding more specific allegations of intent places no burden on the defendant-official, the district judge may choose that alternative before resolving the immunity question, which sometimes requires complicated analysis of legal issues.
>
> If the plaintiff's action survives these initial hurdles and is otherwise viable, the plaintiff ordinarily will be entitled to some discovery. Rule 26 vests the trial judge with broad discretion to tailor discovery narrowly and to dictate the sequence of discovery. On its own motion, the trial court "may alter the limits in [the Federal Rules] on the number of depositions and interrogatories and may also limit the length of depositions under Rule 30 and the number of requests under Rule 36. The frequency or extent of use of the discovery methods otherwise permitted under these rules ... shall be limited by the court if it determines that ... (iii) the burden or expense of the proposed discovery outweighs its likely benefit, taking into account the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the litigation, and the importance of the proposed discovery in resolving the issues."
> Rule 26(b)(2).
>
> Additionally, upon motion the court may limit the time, place, and manner of discovery, or even bar discovery altogether on certain subjects, as required "to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." Rule 26(c). And the court may also

set the timing and sequence of discovery.

Thus, Plaintiffs were not entitled to full discovery at the qualified immunity stage. Even so, as a result of Defendant Lee Lucas's criminal trial, the parties agreed to provide Plaintiffs with the transcripts, evidence and exhibits produced at his trial. This was unique in that all the relevant defendants in the above civil actions testified in the Lucas criminal trial and Lucas's alleged misconduct in the above captioned cases was tried in the criminal proceeding. The result was an enormous amount of evidence available to Plaintiffs that they would not normally have had access to in a standard qualified immunity case.

On March 3, 2011, the Court granted limited discovery on qualified immunity and ordered the parties to submit their proposed discovery plans. Plaintiff in Price sought to depose thirteen individuals, including Kim Thomas, the investigator on the OIG Report and Bray. After conferring with counsel and hearing the parties' representations on how to proceed with discovery, the Court granted limited discovery due to the unprecedented amount of discovery already provided Plaintiff. This included sworn testimony from most of the witnesses identified by Plaintiff Price in his April 27, 2011 Report. The Court limited the discovery to interrogatories.

In *Webb*, Plaintiff sought the deposition of Defendants and the Court ordered interrogatories in light of the unprecedented discovery already provided.

Based on the substantial discovery provided Plaintiffs resulting from the Lucas criminal trial, the Court limited additional discovery on qualified immunity to interrogatories. Webb did not seek to depose Bray, but Price did. Regardless, the Court acted within its discretion to limit the qualified immunity discovery to interrogatories of those named

individuals in Plaintiff's 2011 discovery requests in light of the United States Supreme Court's express holding that trial court's may narrowly tailor qualified immunity discovery.

After the Sixth Circuit reversed in part and remanded the case for further adjudication the Court set a full discovery schedule. While Bray's untimely death presents problems for all parties in the litigation based on his conflicting statements, the Court finds that sanctions are not justified even thoughPlaintiffs do not have the opportunity to depose him. Furthermore, the Court has not found sufficient evidence of Defendants' bad faith. Plaintiffs point to the representations by the Defendants as to what had been provided to Plaintiffs in discovery as clearly deceptive. For instance, in Lucas's December 19, 2011 Response to Plaintiff's List of Discovery it sought to obtain, he recounted:

> At this juncture, and since the conclusion of the Lucas criminal trial in February of 2010, so much discovery has been made available to plaintiff Webb that the Sixth Circuit's Westerfield decision is rendered moot. Since that decision has been decided, plaintiff Webb has been provided with almost 4,000 pages of trial transcript from the Lucas criminal trial. Also provided to him were all of the trial exhibits admitted into evidence at the Lucas criminal trial, consisting of over 22,000 document pages.
>
> These documents and exhibits included, among other things, ***the entire internal files of the United States Attorney's Office in Cleveland, United States Drug Enforcement Administration, Richland County Sheriff's Office and the other law enforcement agencies involved in the Mansfield cases***. The following categories of evidence has been provided to plaintiff on all of the Mansfield deals, including the one deal on October 14, 2005 that Webb was alleged to have been involved: all investigative reports of the undercover transactions and proffers of the Mansfield defendants, the trial testimony of Bray, including on the October 14, 2005 deal, all audio and video recordings of the Mansfield transactions, as well as complete transcripts of these recordings. (Emphasis added).

However, the OIG Report was completed in January of 2011. Thus, the parties had it in their possession when Lucas made the above representation.

The Court finds that there is no clear indication of Defendants' bad faith sufficient to warrant the harsh sanctions Plaintiffs seek. It is unclear whether the Defendants' representation that they had produced the internal files of the DEA included the OIG Report which was produced by the Department of Justice and the Office of the Inspector General. Moreover, the limited discovery on qualified immunity in this case did not require Defendants to turn over everything. Unquestionably, Defendants provided significant discovery on qualified immunity. Plaintiffs had the Lucas trial transcripts wherein the OIG investigator described in detail the investigation of Lucas. Furthermore, this Court's qualified immunity discovery orders only permitted limited interrogatories in light of all the materials already provided. Lastly, Plaintiffs are not prejudiced at trial having obtained the OIG Report during full discovery.

For the foregoing reasons, the Court denies Plaintiffs' Motions.

IT IS SO ORDERED.

                                         s/ Christopher A. Boyko
                                         CHRISTOPHER A. BOYKO
                                         United States District Judge

Dated: April 21, 2017